UNITED STATES of America, Plaintiff–Appellant,

v.

Millard E. BOLDEN, Defendant–Appellee.

No. 88–5183.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 4, 1989.

Decided Nov. 22, 1989.

Jennie L. Montgomery, Asst. U.S. Atty. (John R. Alderman, U.S. Atty., on brief) for plaintiff-appellant.

Emanuel Claborn Edwards, for defendant-appellee.

Before WINTER, HALL, and PHILLIPS, Circuit Judges.

HARRISON L. WINTER, Circuit Judge:

The principal question that this appeal presents is whether, under the applicable Sentencing Guidelines, the district court correctly sentenced the defendant to probation without any confinement upon his conviction of two charges of check kiting and two charges of aiding in false statements to a bank. We hold that it did not. It is our view that confinement of some type was mandated, and no basis existed for a downward departure from this requirement. On the government's appeal, we reverse and remand for resentencing in accordance with the views we set forth.

### I.

The facts concerning the offenses were stipulated. Defendant, Millard E. Bolden, a Roanoke City school teacher, during the period June 1987 through April 1988, used three checking accounts, two at the Colonial American National Bank (one for the Estate of Oscar Dearing and Nellie Dearing, and one for Janet L. Carr) and one at the Roanoke Teachers Federal Credit Union (in the name of Bolden and his wife) in a check kiting scheme. Bolden would make withdrawals on one account in amounts in excess of the balance of that account and cover the withdrawals with checks drawn on one or both of the other accounts in amounts in excess of the balances in those accounts. It was later determined that the aggregate loss to the bank and the credit union exceeded $33,000.

After the scheme was discovered, Bolden sought to obtain funds to repay the overdrafts. He was successful in borrowing some funds from friends, and he solicited other friends and associates to borrow funds for him to eliminate the overdrafts. In connection with the latter activity, Bolden aided in the filing of at least two false loan application forms with the Colonial American National Bank requesting home improvement loans when in fact the purpose of the loans was to pay the overdrafts. These loan applications were denied.

Overall, Bolden successfully raised funds to reduce his indebtedness to the bank and the credit union to approximately $6,400, but he remains indebted to friends and associates who advanced him funds in a substantial sum.

Bolden pled guilty to a four count information charging two violations of 18 U.S.C. § 1344 based upon the deposit of two worthless checks and the subsequent drawing upon those worthless checks, and two violations of 18 U.S.C. §§ 1014 and 2 for aiding and abetting two loan applications in which false representations as to the purpose of the loan were made. By agreement, Bolden proceeded immediately to sentencing. For purposes of sentencing, the district court consolidated the two § 1344 charges and consolidated the two § 1014 and 2 charges. *See* U.S. Sentencing Comm'n Guidelines Manual §§ 3D1.1, 3D1.2 (rev. ed. 1988) [hereinafter "Guidelines"].

The government, Bolden, and the district court disagreed over the applicable offense total and guideline range. In their formal written plea agreement, Bolden and the government agreed upon an offense level of 10 subject to a criminal history check and subject to Bolden's full disclosure of the events upon which the charges were based so as to entitle him to the 2 point allowance for acceptance of responsibility given him in computing the offense level of 10. Nevertheless, after various witnesses testified about the criminal activity, Bolden argued that the offense level should be 8 with probation and restitution to the banks and injured parties.[1] In his presentence

---

1. Bolden arrived at this figure by adding to the base offense level of 6 covering 18 U.S.C.

report, the probation officer recommended a total offense level of 11, as the officer found that Bolden received a substantial portion of his income from the check kiting scheme.[2] Despite this offense level, however, the presentence report recommended a downward departure in the sentence of a level 11 offender (the range of which is 12–18 months). The probation officer noted that "[t]he defendant is a good candidate for probation in that he does not have a prior record, has been a law abiding citizen, and is very active in the community." The government disagreed, and argued that the plea agreement correctly stipulated level 10 as the proper offense level.[3]

During the sentencing proceedings, the district court noted its inclination to deviate from the guidelines and sentence only to probation if the school board voted to allow the defendant to keep his job. However, the district judge stated that "if he loses his job and doesn't have any work, the court is probably going to follow the guidelines."

At the final sentencing hearing, the district court again heard evidence concerning the 3 point enhancement for criminal livelihood. Apparently abandoning its insistence on a level 10 offense, the government now argued for a level 11 offense. The district court, however, rejected this position and found that a 3 level enhancement was unjustified. Consequently, it found offense level 8 to be the correct total. After making that finding, the district judge stated:

I am going to deviate from the guidelines in this case for the following reasons. One, you haven't been in any trouble before. Second, if I send you off, I think you're going to lose your job. You're going to lose your ability to pay, and nobody is going to gain by my sending you off. So I'm going to sentence you to a period of probation of five (5) years.

The district judge repeated the same thought later when he stated:

And I'm deviating from the guidelines, I'm saying once again, because you haven't been in any trouble before, because I think you're trying to turn your life around, and if I send you away you're definitely going to lose your job. And if I leave you here, hopefully you can get to work on making restitution, not only to the bank but to these people who've come to your rescue and have loaned you money because they're your friends.

Although probation is allowable for a level 8 offender, the guidelines require in addition some conditions that impose intermittent confinement or community confinement. Guidelines § 5B1.1.[4] The district court departed from this requirement when it sentenced the defendant to probation with no condition of confinement.[5] The government appeals both this deviation and the finding of offense level 8.

## II.

■ The scope of our review is set forth in 18 U.S.C.A. § 3742(e) (West Supp.1989).

---

§§ 1014, 1344, a 4 point enhancement for the amount of money involved (over $20,000), and subtracting 2 points for acceptance of responsibility. See Guidelines §§ 2F1.1, 3E1.1.

**2.** The probation officer arrived at 11 by adding a 3 point enhancement for criminal livelihood to the 8 point level advocated by the defendant. See Guidelines § 4B1.3 (offense level shall be not less than 11 if defendant committed an offense "from which he derived a substantial portion of his income" and acceptance of responsibility applies).

**3.** The government arrived at this level by adding to the base offense level of 6, a 4 point enhancement for the amount of money taken by fraud, and a 2 point enhancement for "more than

minimal planning" (see Guidelines § 2F1.1), subtracting therefrom a 2 point reduction for acceptance of responsibility. The sentence range for a level 10 offender is 6 to 12 months. Id., at Ch. 5, Pt. A (Sentencing Table).

**4.** The sentence range for a level 8 offender is 2–8 months. However, probation is allowable only if the court imposes a condition or conditions requiring at least two months of community confinement or intermittent confinement totalling at least two months. Guidelines § 5B1.1, comment. (m.1(b)).

**5.** The court also ordered Bolden to make restitution to the Colonial American National Bank of $6,474 and perform 300 hours of community service.

In this appeal, we are charged with a determination of whether the sentence was imposed "as a result of an incorrect application of the sentencing guidelines" or "is outside the applicable guideline range, and is unreasonable." 18 U.S.C.A. § 3742(e)(2) and (3). We think that the sentence was so imposed. Specifically, we conclude that the district court erroneously computed the base offense level; it relied on impermissible factors to effect a downward departure from the Guidelines; and it failed to impose some condition of confinement as a condition precedent to probation as required by the guidelines.

## III.

■ In our view, the correct base offense level is 10. We arrive at this figure in this manner: For a conviction of fraud, the base offense level is 6, and because the amount of the loss was in the range of $20,000–$50,000, the level is raised 4 points to 10. Guidelines § 2F1.1(b)(1). Moreover, the offense involved "more than minimal planning" and was a "scheme to defraud more than one victim." Thus, the offense level is raised an additional 2 points to 12. Guidelines § 2F1.1(b)(2).[6] Indeed, Bolden stipulated in his plea agreement that his offenses involved more than minimal planning.

From level 12, Bolden is entitled to a 2 point reduction for acceptance of responsibility. The district court found that Bolden had accepted responsibility for his criminal conduct and hence was entitled to a reduction to level 10. Guidelines § 3E1.1. The government does not contest this finding on appeal, and we conclude that it is not clearly erroneous.

## IV.

■ With a base offense level of 10, the guidelines provide that, having no prior

criminal record, Bolden should be sentenced to a term of 6–12 months. The guidelines do, however, permit a sentence of probation where, *inter alia*, as here, the minimum term of imprisonment is not more than six months "provided that the court imposes a condition or combination of conditions requiring intermittent confinement or community confinement as provided in § 5C2.1(c)(2)...." Guidelines § 5B1.1. By statute, the district court must sentence a convicted defendant to a term within the range set forth in the guidelines unless it finds "an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines...." 18 U.S.C.A. § 3553(b) (West Supp.1989); *United States v. Otero,* 868 F.2d 1412, 1414 (5th Cir.1989). Thus, no departure is permitted on the basis of circumstances adequately considered by the Sentencing Commission. *United States v. Uca,* 867 F.2d 783, 786 (3d Cir. 1989). Additionally, appellate review of departures is plenary. *Uca, supra; United States v. Ryan,* 866 F.2d 604, 610 (3d Cir. 1989).

■ When the sentence fashioned by the district court is analyzed under these rules, several errors become apparent.[7] First, in fashioning a sentence after computation of the correct offense level, the district court cannot credit Bolden for lack of a record of prior criminal behavior. The fact that Bolden had not previously committed any crime is a factor that is taken into consideration in the Sentencing Table. Thus, when the offense level of 10 is correctly computed, an offender who has no criminal record (or a record of only one prior conviction) may be sentenced to 6–12 months (according to the Sentencing Table). An offender who has two or three prior offenses must

---

**6.** Although this increment was urged in the district court by the government, the district court made no finding with respect thereto nor did it adopt the increment. In our view, the record is undisputed that the check kiting scheme required more than minimal planning and both the bank and the credit union were defrauded so that any finding of fact that the increment was not justified would be clearly erroneous.

As a matter of law the increment must be added. *See* Guidelines § 2F1.1(b)(2).

**7.** Because this appeal turns primarily on a legal interpretation of a guideline term as well as on which offense level applies, our review is *de novo. United States v. Daughtrey,* 874 F.2d 213, 218 (4th Cir.1989).

be sentenced in the range of 8–14 months and one with four, five, or six prior offenses must be sentenced in the range of 10–16 months. *See* Guidelines Ch. 5, Pt. A (Sentencing Table). Having received credit for his lack of prior offenses in the determination of the sentence range, Bolden is not entitled to further credit in the form of a downward adjustment of the permissible sentence that may be imposed.[8]

■ Second, we do not think that the economic desirability of attempting to preserve Bolden's job so as to enable him to make restitution warrants a downward adjustment from the guidelines. Although the guidelines are silent as to whether ability to maintain employment is a ground for departure, it was clearly the intention of the Sentencing Commission that the crime of which Bolden was convicted should carry some period of confinement. The Commission frankly noted that the guidelines make mandatory a prison sentence for a number of crimes, including theft and fraud, upon which probation was previously given, but as a countervailing consideration the guidelines permit the imposition of short prison terms in many cases. Guidelines Ch. 1, Pt. A4(d), at 1.8–1.9. "The Commission's view is that the definite prospect of prison, though the term is short, will act as a significant deterrent to many of these crimes, particularly when compared with the status quo where probation, not prison, is the norm." *Id.*, at 1.9.

Of course, the minimum sentences fixed by the guidelines are not totally inflexible. Appellate review of sentencing decisions should not, as the Sentencing Commission points out, take place in ignorance of the district court's superior "feel" for the defendant and the trial proceedings. *See* Guidelines Ch. 1, Pt. A4(b) (Policy Statement) (Commission recognizes "the difficulty of foreseeing and capturing a single set of guidelines that encompass the vast range of human conduct potentially relevant to a sentencing decision"); *id.* at § 5K2.0 (Policy Statement) ("The controlling decision as to whether and to what extent departure is warranted can only be made by the court at the time of sentencing."). *Cf. United States v. Diaz–Villafane*, 874 F.2d 43, 50 (1st Cir.1989) ("We will not lightly disturb decisions to depart...."). However, the guidelines mandate that downward adjustments are appropriate only in the *unusual* case. Guidelines Ch. 1, Pt. A4(b), at 1.6–1.7 (Policy Statement). The test for downward departure set forth in the statute requires a finding that "there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C.A. § 3553(b) (West Supp.1989). In making such a finding, the statute further specifies that the court shall consider "only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission." *Id.* In turn the Sentencing Commission, in addition to its policy about sentences of confinement for white collar criminals, has said that a departure from the guidelines should be undertaken only if "a particular case presents atypical features...." Guidelines Ch. 1, Pt. A2; *see also Uca*, 867 F.2d at 787 ("attempts to impose uniformity will be destroyed if courts depart often from the Guidelines").

We do not perceive any factors present in Bolden's case that would reasonably warrant a downward departure from the sentencing range set forth in the guidelines. If incarcerated under conditions that would render him unable to work,[9] Bolden is no different from any other person convicted of a similar offense. Both would be unable to work; it is not unlikely that both would be discharged; without earned in-

---

**8.** The guidelines do, however, permit an *upward* departure where the criminal history category does not reflect adequately the seriousness of the defendant's past criminal conduct. Guidelines § 4A1.3 (Policy Statement).

**9.** Although the guidelines provide for imprisonment, they also provide the sentencing court with other options that may allow Bolden to keep his job. Because the minimum sentence for Bolden is fixed at not more than six months, he could be placed on probation "provided that the court imposes a condition or combination of conditions requiring intermittent confinement or community confinement as provided in § 5C2.1(c)(2) (Imposition of a Term of Imprisonment)." Guidelines § 5B1.1(a)(2). Section

come both would be hindered or prevented from making restitution. Similarly, we do not think that the fact that Bolden has made some restitution, if borrowing from friends to pay the bank and the credit union may be deemed such, and promises to make future restitution is any justification to adjust downward the minimum sentence of confinement set forth in the guidelines, although they may be relevant to the sentencing court in deciding what sentence within the guidelines to impose. *See* 18 U.S.C.A. § 3553(a)(7) (West Supp.1989) (court, "in determining the particular sentence to be imposed, shall consider— ... the need to provide restitution to any victim of the offense.").

### V.

In the light of what has been said, the sentence imposed on Bolden is vacated and his case is remanded to the district court for resentencing in accordance with the views expressed herein.

VACATED AND REMANDED.

5C2.1(c)(2) states that the minimum term of a sentence may be satisfied by "a sentence of probation that includes a condition or combination of conditions that substitute intermittent confinement or community confinement for imprisonment according to the schedule in § 5C2.1(e)," and the latter section prescribes as substitutes for a month of imprisonment (a) thirty days of intermittent confinement provided that one day shall be credited for any calendar day during which the defendant is employed in the community and confined during all remaining hours, and (b) one month of residence in a community treatment center, halfway house or similar residential facility. Guidelines § 5C2.1(e)(1)–(2).