UNITED STATES of America,
Plaintiff–Appellant,

v.

Lynda Gail BREWER and Teresa K. Evans, Defendants–Appellees.

No. 89–5371.

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 8, 1989.

Decided March 29, 1990.

504

Joe B. Brown, U.S. Atty. (argued), Office of U.S. Atty., Nashville, Tenn., for plaintiff-appellant U.S.

Carol L. Soloman (argued), Nashville, Tenn., for defendant-appellee Brewer.

Robert L. Smith (argued), Smith & Hirsch, Nashville, Tenn., for defendant-appellee Evans.

Before MERRITT, Chief Judge, WELLFORD, Circuit Judge, and DeMASCIO *, Senior District Judge.

WELLFORD, Circuit Judge.

The issue in this case is whether the district court departed from the applicable sentencing guidelines for proper reasons under the new Sentencing Act. Co-defen-

---

* The Honorable Robert E. DeMascio, Senior Judge, United States District Court for the Eastern District of Michigan, sitting by designation.

dants Brewer and Evans plead guilty to embezzlement. At the sentencing hearing, the district court determined that circumstances existed which justified a downward departure in sentencing from the range indicated by the guidelines. We will remand to the district court for the reasons indicated.

Teresa Evans and Lynda Brewer were indicted by a grand jury on one count of embezzlement under 18 U.S.C. §§ 652 and 2 (aiding and abetting). Both entered guilty pleas, and a sentencing hearing was held. The district court sentenced both to probation for a period of three years, except that both would be subject to limited home detention for the first ninety days. The court assessed both defendants a special assessment of $50 under the guidelines.

Brewer and Evans were tellers of the Wayne County Bank in Waynesboro, a small Tennessee community of less than 2500 people. They had periodically embezzled money from the bank over an approximate ten-month period. Evans admittedly embezzled approximately $19,000, and Brewer admittedly embezzled approximately $9,000. In an attempt to cover up their scheme, they periodically adjusted the bank vault balance sheets and also covered for each other. After an unannounced audit of the bank in August of 1988, $28,000 was found to be missing. Their scheme having been uncovered but before any indictment, both defendants voluntarily repaid the bank the missing funds which they had embezzled. They made guilty pleas to the offense charged in the indictment. The responsible bank official expressed surprise that these trusted employees had been guilty of embezzlement.

The presentence reports indicated that the base offense level was four.[1] Both were deemed responsible for the entire $28,000 which had been taken, and this factor was considered under "relevant conduct." United States Sentencing Commis-

sion, *Guidelines Manual,* § 1B1.3(a)(1), (3). Because the amount involved in the crime exceeded $20,000 but was less than $40,-000, a six-level addition was indicated. U.S.S.G. § 2B1.1(b)(1)(G). Two levels were added because the offense involved more than minimum planning. U.S.S.G. § 2B1.1(b)(4). Since both defendants accepted responsibility for their actions, two levels were also subtracted. U.S.S.G. § 3E1.1(a). Pursuant to U.S.S.G. § 4B1.3, the offense level was indicated to be eleven by the presentence report.

At the sentencing hearing, the district court rejected the probation officer's conclusion in the presentence report that an upward adjustment was warranted under the criminal livelihood section and found instead that the offense level was ten; the government does not take issue to this offense level determination. The parties essentially agreed that the district court had the following options, based on this offense level, in sentencing: (1) six months (minimum) incarceration; (2) one-half of the six months in prison and one-half in a halfway house; or (3) six months in a halfway house.[2] The probation officer, in the presentence reports, found no basis to warrant a departure. The district court judge, however, rather than follow the above sentencing options under the guidelines, effectuated a downward departure and, in essence, gave defendants three years probation.

The district court judge justified his departure on the following factors:

(1) the degree of community support that both of these defendants obviously enjoy....

(2) the degree of remorse that has been demonstrated since the first day of their discovery....

(3) the degree of promptness of restitution made in this case.

(4) the previous history and continued community involvement....

(5) the fact that their behavior is totally aberrant from their previous life history.

---

**1.** The offense level computation for each of the defendants was the same.

**2.** Subsequent guideline amendments indicate that other options, perhaps more favorable to the defendants, may be presently available in this circumstance to a sentencing judge.

(6) the fact that both of these women have children at home of tender age and are needed at home.

(7) the fact that the victim, Mr. M.L. Howard, the president of the bank which was victimized in this case, recommends clemency....

(8) the fact that incarceration would serve no useful purpose.

The judge found that because these factors were not taken into consideration sufficiently under the guidelines, a downward departure was warranted. The government has established proper authority to undertake this appeal and now appeals the downward departure by the district court.

We first determine on appeal whether the factors cited by the district court as justifying its decision to depart were adequately taken into consideration by the Sentencing Commission when formulating the guidelines.

■ ‵We have indicated that ordinarily a three-step procedure is used in determining whether the district court appropriately departed from the guidelines. First, the reviewing court determines whether "the case is sufficiently 'unusual' to warrant departure." *United States v. Diaz–Villafane*, 874 F.2d 43, 49 (1st Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 177, 107 L.Ed.2d 133 (1989); *United States v. Joan,* 883 F.2d 491, 494 (6th Cir.1989) (adopting three-part test enunciated in *Diaz–Villafane* ). This is purely a question of law. *Diaz–Villafane,* 874 F.2d at 49.

Second, we determine whether the circumstances, if conceptually proper, actually exist in the particular case. That assessment involves factfinding and the trier's determinations may be set aside only for clear error. *See* 18 U.S.C. § 3742(d).

Third, once we have assured ourselves that the sentencing court considered circumstances appropriate to the departure equation and that those factors enjoyed adequate record support, the direction and degree of departure must, on appeal, be measured by a standard of reasonableness. 18 U.S.C. § 3742(e)(2); *et al.* 874 F.2d at 49.

■ The district court justified its departure on the ground that circumstances existed in this case which the Commission did not adequately take into consideration in formulating the guidelines. Under 18 U.S.C. § 3553(b),

[t]he court *shall impose a sentence ... within the range,* referred to in subsection (a)(4) unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.

18 U.S.C. § 3553(b) (emphasis added). As U.S.S.G. § 5K2.0 indicates:

[w]here the applicable guidelines, specific offense characteristics, and adjustments do take into consideration a factor listed in this part, departure from the guideline is warranted only if the factor is present to a degree *substantially in excess of that which ordinarily is involved in the offense of conviction.*

U.S.S.G. § 5K2.0 (emphasis added). "The guidelines, commentaries, and policy statements clearly indicate that departures should be rare." *United States v. Uca,* 867 F.2d 783, 787 (3d Cir.1989) ("departures are to be the exception, not the rule"); *Diaz–Villafane,* 874 F.2d at 52. Thus, a sentencing court should not depart from the guidelines when the Sentencing Commission has adequately taken into consideration the pertinent factors unless rare and exceptional circumstances warrant departure. In reviewing the sentencing court's departure, we apply the facts found by the district court unless they are clearly erroneous. *United States v. Perez,* 871 F.2d 45, 47 (6th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 3227, 106 L.Ed.2d 576 (1989). We make a *de novo* review of the lower court's conclusions of law. *United States v. Ryan,* 866 F.2d 604 (3d Cir.1989). We also give "due deference to the district court's application of the guidelines to the facts." 18 U.S.C. § 3742(e).

■ In promulgating the guidelines, one of the Sentencing Commission's primary goals was to impose a sentence "based upon the crime committed, not the offender." *United States v. Mejia–Orosco*, 867 F.2d 216, 218 (5th Cir.), *cert. denied,* — U.S. ——, 109 S.Ct. 3257, 106 L.Ed.2d 602 (1989). The Sentencing Commission has stated that Congress had three objectives in passing the sentencing reform law: (1) honesty, (2) uniformity, and (3) proportionality. "Congress first sought *honesty* in sentencing." U.S.S.G. Ch. 1, Pt. A, Intro. Comment (emphasis in original). In essence, Congress and the Commission have sought less disparity in sentencing.

> Second, Congress sought *uniformity* in sentencing by narrowing the wide disparity in sentences imposed by different federal courts for similar criminal conduct by similar offenders. Third, Congress sought *proportionality* in sentencing through a system that imposes appropriately different sentences for criminal conduct of different severity.

*Id.* (emphasis in original). One of the major efforts was to reduce the sentencing judge's discretion:

> [G]ranting such broad discretion [to the judge] risks correspondingly broad disparity in sentencing, for different courts may exercise their discretionary powers in different ways. That is to say, such an approach risks a return to the wide disparity that Congress established the Commission to limit.

*Id.* While the guidelines are not "mandatory sentencing rules," *United States v. Allen*, 873 F.2d 963, 967 (6th Cir.1989) (Merritt, J., concurring), we strongly believe that "the Act and Guidelines substantially circumscribe the discretion which sentencing courts formerly exercised." *Id.* at 966 (citations omitted).

> In striving for uniformity, Congress sought to "narrow[ ] the wide disparity in sentences imposed by different federal courts for similar conduct by similar offenders." In striving for proportionality, Congress sought to establish "a system that imposes appropriately different sentences for criminal conduct of different severity." In turn, the Sentencing Com-

mission attempted to further Congress's aims. It follows inexorably that, to implement the guidelines properly, courts must bear these goals in mind. Among other things, courts must remember the importance which Congress, and the Commission, attached to ensuring that like situations are treated alike.

> To this end, only cases outside the "heartland" for the crime of conviction warrant departure. As Congress ordained, a district court may depart from the guidelines if it "finds that there exists [a] ... circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described," 18 U.S.C.A. § 3553(b), and not otherwise.

*United States v. Williams*, 891 F.2d 962, 963–64 (1st Cir.1989) (citations omitted).

With regard to what has been traditionally known as white-collar crimes, the Sentencing Commission had this to say:

> Under present sentencing practice, courts sentence to probation an inappropriately high percentage of offenders guilty of certain economic crimes, such as theft, tax evasion, antitrust offenses, insider trading, fraud, and *embezzlement,* that in the Commission's view are "serious." If the guidelines were to permit courts to impose probation instead of prison in many or all such cases, the present sentences would continue to be ineffective.

> The Commission's solution to this problem has been to write guidelines that classify as "serious" (and therefore subject to *mandatory* prison sentences) many offenses for which probation is now frequently given. At the same time, the guidelines will permit the sentencing court to impose short prison terms in many such cases. The Commission's view is that the definite prospect of prison, though the term is short, will act as a *significant deterrent* to many of these crimes, particularly when compared with the status quo where probation, not prison, is the norm.

U.S.S.G. Ch. 1, Pt. A., Intro. Comment (emphasis added).

Judge Stephen Breyer, one of the authors of the guidelines and a member of the Commission, has expressed the same sentiments:

The Commission found in its data significant discrepancies between pre-Guideline punishment of certain white-collar crimes, such as fraud, and other similar common law crimes, such as theft. The Commission's statistics indicated that where white-collar fraud was involved, courts granted probation to offenders more frequently than in situations involving analogous common law crimes; furthermore, prison terms were less severe for white-collar criminals who did not receive probation. To mitigate the *inequities* of these *discrepancies*, the Commission decided to *require* short but certain terms of confinement....

Breyer, "The Federal Sentencing Guidelines and the Key Compromises Upon Which They Rest," 17 *Hofstra L.Rev.* 1, 20 (emphasis added).

The Commission took this course for two reasons. First, the Commission considered present sentencing practices, where white-collar criminals receive probation more often than other offenders who committed crimes of comparable severity, to be unfair. Second, the Commission believed that a short but definite period of confinement might deter future crime more effectively than sentences with no confinement condition.

*Id.* at 22. The guidelines provide, then, that white collar criminals, who frequently have no previous record, are to be treated no differently than other criminals committing comparable economic offenses. With this background in mind, we now turn to the specific factors cited by the district court as justifying the downward departures.

1. *The degree of community support, continued community involvement, and family ties*

■ The district court cited the community support which the defendants enjoyed, their continued community involvement, and the fact that the defendants have young children at home in support of its decision to depart downward from the guidelines. While the record indicates that the defendants enjoy community support, are still involved in the community, and have children at home, these circumstances were adequately taken into consideration by the Commission when formulating the guidelines. These factors listed by the district court in justifying its downward departure are not ordinarily exceptional, and therefore, a downward departure based on these factors is usually not warranted.

"Family ties and responsibilities and community ties are not ordinarily relevant in determining whether a sentence should be outside the guidelines." U.S.S.G. § 5H1.6. Also, race, sex, and socio-economic status "are not relevant in the determination of a sentence." U.S.S.G. § 5H1.10. Although a short prison term may impose hardship, "[u]nfortunately, it is not uncommon for innocent young family members, including children ... to suffer as a result of a parent's incarceration." *United States v. Fiterman,* No. 89 CR 176–1 (N.D.Ill. June 23, 1989). Defendants have pointed to no facts in this record which indicate that these factors are "present to a degree substantially in excess of that which ordinarily [are] involved in the offense of conviction [for bank embezzlement]." U.S.S.G. § 5K2.0.

The district court failed to point out why the defendants' community support or family ties were "substantially in excess" of those generally involved in other bank teller embezzlement cases, especially those cases which occur in small town settings. The defendants have stable family relationships, had good jobs at the bank, their spouses were gainfully employed, and they had no financial difficulties which they claimed justified them in any way in committing this serious economic crime.[3]

---

3. Unlike the dissent's view, we deem embezzlement of the $28,000 by bank tellers, assisting one another, as involving a substantial amount not a "relatively small" amount. This is true because Waynesboro, Tennessee, is a relatively small community.

Many bank tellers who defraud national banks have long tenured employment, enjoy community support, have families to raise and support, or other family responsibilities. We have serious doubt that these factors are "sufficiently 'unusual' to warrant departure." *Diaz–Villafane,* 874 F.2d at 49. We note in the dissent's analysis on the sex and motherhood status of defendants, there is no citation to the guidelines or case authority taking issue with our rationale. Regrettably, females and mothers are involved in criminal conduct, and the guidelines specifically state that consideration of sex (or race) is irrelevant to guideline sentencing. *See United States v. Carey,* 895 F.2d 318 (7th Cir.1990).

2. *Degree of remorse and promptness of restitution*

■ The district court also cited as relevant factors the defendants' degree of remorse and their prompt payment of restitution. In the guidelines at § 3E1.1, the Commission indicated that acceptance of responsibility was clearly a factor in reducing a defendant's sentence. "If the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct, reduce the offense level by 2 levels." U.S.S.G. § 3E1.1(a). In fact, the court in this case appropriately reduced the defendants' sentence by two levels for their acceptance of responsibility.

With regard to the defendants' payment of restitution, the "Application Notes," to § 3E1.1 of the guidelines expressly state that "voluntary payment of restitution prior to adjudication of guilt" is a factor to be considered in determining whether a defendant qualifies for the two-level reduction for acceptance of responsibility. Once again, the factor of restitution and remorse was considered under the guidelines, and the defendants' offense level was appropriately reduced by two levels. Unless defendants have proved that their voluntary repayment of the embezzled funds constitutes an "exceptional circumstance," a downward departure based on this factor was not warranted. *See United States v. Bolden,* 889 F.2d 1336 (4th Cir.1989). The

district court must then review this basis for departure. Contrary to the dissent's unsupported statement, the voluntary admissions and restitutions have been "taken into account" in the guidelines and defendants were given full credit therefor in calculating the numerical base for determining a guideline range. *See United States v. Carey,* 895 F.2d 318 (7th Cir. 1990).

3. *Defendants' previous criminal history and aberrant nature of conduct*

■ Another factor cited by the district court for departing downward was the defendants' "previous history," and that these continued acts of embezzlement represented a complete departure from their prior conduct. These factors, too, were considered by the Sentencing Commission in promulgating the guidelines, as evidenced by the inclusion of six categories of a defendant's criminal history. Because the defendants did not have a previous criminal history and had a good record as tellers, they were appropriately placed in Criminal History Category I. Since this was a factor expressly taken into consideration by the Sentencing Commission and since the defendants have failed to demonstrate exceptional circumstances warranting a downward departure, the district court erred in relying on the defendants' lack of a criminal background in departing downward from the guidelines. *See Bolden,* 889 F.2d at 1339–40; *United States v. Williams,* 891 F.2d 962 (1st Cir.1989).

4. *No useful purpose for incarceration*

■ An additional factor cited by the court requiring a downward departure was that incarceration would serve no useful purpose. As stated earlier, the guidelines were promulgated to ensure that sentencing judges would impose sentences which fit the crime committed and to ensure uniform sentences "for similar criminal conduct by similar offenders." U.S.S.G. Ch. 1, Pt. A, Intro. Comment. It is simply not the sentencing judge's prerogative if he disagrees with the guideline concepts to determine whether incarceration would serve a

useful purpose when the guidelines expressly provide for a minimum jail term. Because the guidelines were promulgated to reduce a judge's complete discretion in those matters of principle, we believe that the district court judge improperly departed from the guidelines based on this factor.[4] *See Bolden, supra; United States v. Williams, supra.*

### 5. *Victim's recommendation of clemency*

■ The district court also relied on the plea of clemency by the alleged victim—the president of the bank—in justifying a downward departure. The government characterizes this factor as one of employment history, citing §§ 5H1.2 and 5H1.5 of the guidelines.

> Education and vocational skills are not ordinarily relevant in determining whether a sentence should be outside the guidelines.... Neither are education and vocational skills relevant in determining the type of sentence to be imposed when the guidelines provide sentencing options.

U.S.S.G. § 5H1.2. Like education and vocational skills, a defendant's "[e]mployment record is not ordinarily relevant in determining whether a sentence should be outside the guidelines or where within the guidelines a sentence should fall." U.S.S.G. § 5H1.5.

Although couched in terms of a plea for leniency, the remarks from the bank president direct primary attention to the defendants' employment history, their community support, their prompt restitution, and their family responsibilities, some of which we have previously discussed. These other factors were adequately taken into consideration by the guidelines, and we harbor serious reservations that the defendants established that these factors are so excep-

tional as to warrant a downward departure.[5] The district judge's reliance on the bank president's plea for leniency in sentencing under these circumstances may have been misplaced since he was a long-time friend of defendants.

### 6. *Other Factors*

■ The district court emphasized mitigating reasons which it felt warranted a downward departure. We have pointed out that some or most of those reasons were not, or may not have been, justified under the guidelines. We note also that the district court in fairness in such cases should not merely emphasize mitigating circumstances while failing to consider aggravating factors that may counterbalance mitigating circumstances. Specifically, in this case both defendants failed to proffer any rational explanation or excuse for being compelled over a number of months to embezzle substantial amounts, the total of which exceeds their annual earned incomes, and acting in concert and in conspiratorial fashion in their wrongdoing. Their spouses were gainfully employed and the criminal conduct was not a one-time affair, but rather continuous in character over many months. We remand for consideration of these aggravating as well as mitigating factors as well as elimination of those factors which were not a proper basis for departure. *See United States v. Robinson,* 898 F.2d 1111 (6th Cir.1990).

We recognize and appreciate the difficulties imposed upon district judges in imposing sentences under the guidelines. We recognize also that departures are warranted in the rare and unusual case. When warranted, when a proper basis exists, and when it is reasonable, we generally affirm the district court's exercise of discretion

---

**4.** In *United States v. Newsome,* 894 F.2d 852 (6th Cir.1990), we stated:

> It would not be lawful for the district court to impose a sentence above the guideline range on the theory that such a sentence, as an abstract proposition, would better serve the interest of deterrence and rehabilitation than would a sentence within the guideline range.

**5.** In any event, the bank president is not the victim in this case; rather, the shareholders of the bank are the victims. We do not hereby indicate that a victim's plea for leniency would never justify a downward departure.

ordering a departure.[6] The district judge in this case is able and experienced in the complex and trying sentencing process, and we have confidence that he will effect a sentence in the spirit of the guidelines regardless of his personal views about their merit.

We are puzzled that the dissent has misconceived our rationale underlying this remand. We make no effort to "put the sentencing judge in a strait jacket;" it is the Congressional mandate effectuated in the sentencing guidelines, designed to bring about uniformity, that we are following here. Unfortunately, the dissent seems somewhat displeased with the guidelines and misinterprets them by insisting that the guidelines, or our opinion, takes into account only aggravating circumstances and not mitigating circumstances as well. We certainly do not attempt to "proscribe consideration of these mitigating facts." We only emphasize that the sentencing court must also consider counterbalancing facts, not merely relevant mitigating circumstances in the sentencing process. We point out that a sentencing court should not treat as unique or unusual factors, those circumstances that the guidelines have already taken into account or expressly deemed irrelevant. We join with the dissent in encouraging the district court "to take into consideration the full panoply of *relevant* sentencing facts," (emphasis added), and we give "due deference" to the district court in this process.

Finally, we do not share the concerns expressed in part V of the dissent. Only a handful of appeals from downward departure sentences have come to this court. It is true that appeals from upward departures have come to us in large numbers, and we have, appropriately, remanded or reversed district courts in a few decisions in that respect which we deemed to have violated the law, or involved improper or wrongful basis for departure. The writers of the majority opinion have served as district judges for many years, and we appreciate the difficulty of adopting standards

and procedures in carrying out court responsibilities under the new guideline procedures. We do not intend by our action to "create an inflexible sentencing system," nor do we hereby transform the guidelines into "mechanistic 'rules'."

Accordingly, we REMAND this case to the district court for resentencing in accordance with the principles herein expressed.

MERRITT, Chief Judge, dissenting.

In this downward departure sentencing appeal, our Court has reversed Chief District Judge Wiseman's sentence of probation for two defendants who are first offenders. I disagree with our Court's decision for five reasons: *First*, our decision admonishes district courts against considering and departing downward on the basis of atypical combinations of sentencing facts favorable to defendants, facts that most judges would consider highly relevant for any reasonable sentencing determination. *Second*, the decision assumes, without any factual basis and contrary to the Sentencing Commission's own statements to the contrary, that the Commission took these factors and nuances into account in devising the Guidelines. *Third*, the decision does not follow the deferential standard of appellate review established in plain statutory language by Congress for such cases. *Fourth*, the decision ignores the clearly stated congressional policy favoring probation for first offenders in such cases. *Fifth*, the decision will make judicial administration in guidelines cases at the trial and appellate levels more difficult.

In this bank embezzlement case, the convictions are first offenses by two young women with previously untainted records and reputations. The amount of money taken was relatively small and was promptly returned. The two young women, who have small children at home to be raised and nurtured, came forward and voluntarily disclosed their wrongs to their employ-

---

**6.** In the annual report of the Commission, it is indicated that approximately 9% of sentences have involved downward departures for reasons other than assisting the government in bringing others to justice. Less than 3% were departures above the guidelines.

ers before anyone discovered their culpability. Their employers, believing that the crimes were not sufficiently serious to justify incarceration, asked the District Court to place the two women on probation.

## I.

In devising a fair sentencing system, there is something worse than small disparities in sentences—mechanistic rules that impose unjust or arbitrary punishment because they preclude the sentencing judge from considering all relevant factors and nuances in the case. Unfortunately, our Court in this case has misinterpreted the Guidelines. In departure cases, it has put the sentencing judge in a stait jacket that does not allow him to take into account all the facts relevant to sentencing. The Court allows the District Court to consider only the limited group of sentencing facts explicitly recognized in the guidelines. I agree that these general facts are relevant. Other facts, however—facts favorable to the defendants—are equally relevant to sentencing and have been universally considered by judges and jurors for hundreds of years. Today, our Court proscribes the consideration of these mitigating facts, either in isolation or in combination.

Why, for example, should we say now for the first time that the fact that the defendant is a young mother who must raise several small children is no longer relevant to her sentence? Why should it be irrelevant that the victim of the crime believes that the crime is not of sufficient seriousness to deserve imprisoning the defendant? Why should it be irrelevant that the defendant came forward and admitted the crime before her culpability was discovered? Such facts, alone and in combination, have heretofore been considered highly relevant by sentencing judges and jurors.

I can find nothing in the Guidelines or its commentary that even suggests that these sentencing facts have been taken into account in devising the Guidelines. The Guidelines omit any consideration of defendant's responsibility to raise young children as it affects a sentencing determination.

The Guidelines and the commentary also fail to consider the case in which the victim views the crime as not sufficiently serious to justify imprisoning the defendant. Furthermore, the Guidelines do not contemplate a defendant who comes forward to confess and offers restitution before the defendant's culpability is discovered. These are precisely the facts found, and considered, by Judge Wiseman. All are clearly relevant sentencing facts which the Guidelines do not mention. Surely when such a combination of mitigating facts appear, the sentencing judge should be permitted to take them into account in meting out the sentence. Our Court clearly errs when it prevents Judge Wiseman from altering a sentence based on such mitigating facts.

## II.

The Sentencing Commission recognized that it could not adequately consider all factors, either singly or in combination, in order to devise a mechanistic grid system for sentencing. The Commission plainly stated:

> The Commission intends the sentencing courts to treat each guideline as carving out a *"heartland,"* a set of typical cases embodying the conduct that each guideline describes. When a court finds an *atypical case*, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted.... The Commission does not intend to limit the kinds of factors (whether or not mentioned anywhere else in the guidelines) that could constitute grounds for departure in an unusual case.

United States Sentencing Commission, *Guidelines Manual,* 4(b), Policy Statement (Nov.1989) (emphasis added).

The Commission then explains the reasoning behind this liberal departure policy:

> The Commission has adopted this departure policy for two basic reasons. First is the difficulty of foreseeing and capturing a single set of guidelines that encompasses the vast range of human conduct

potentially relevant to a sentencing decision. The Commission also recognizes that in the initial set of guidelines it need not do so. The Commission is a permanent body, empowered by law to write and rewrite guidelines, with progressive changes, over many years. By monitoring when courts depart from the guidelines and by analyzing their stated reasons for doing so, the Commission, over time, will be able to create more accurate guidelines that specify precisely where departures should and should not be permitted.

*Ibid.* Although the Sentencing Commission has acknowledged that it was unable to take into account facts such as the ones presented in this case, either in isolation or in combination, our Court insists, without any evidence, that the Commission has in fact adequately considered this unusual combination of facts favorable to these defendants. I do not understand why our Court ignores the Commission's own statement that it has not taken such matters into account. More specifically, why refuse to allow the district courts in our circuit to take into consideration the full panoply of relevant sentencing facts? By today's decision, this Court has turned "guidelines" into mechanistic "rules" which will create serious injustice in many cases in the future. Currently, in the Sixth Circuit, the Guidelines are a prescription for injustice because district judges can no longer prevent the imposition of inappropriately harsh sentences on the basis of sentencing facts favorable to defendants—a prescription for injustice that the Commission tried to correct by creating a liberal departure policy.

### III.

In devising a standard of appellate review for the Courts of Appeals, Congress said:

> The court of appeals shall give the regard to the opportunity of the district court to judge the credibility of the witnesses, and shall accept the findings of fact of the district court unless they are clearly erroneous *and shall give due def-*

*erence to the district court's application of the guidelines to the facts.*

18 U.S.C. § 3742(e) (emphasis added). This standard is the one which we apply in similar settings when questions of the relevancy of facts are at issue. See, e.g., *In re Beverly Hills Fire Litigation,* 695 F.2d 207 (6th Cir.1982), *cert. denied,* 461 U.S. 929, 103 S.Ct. 2090, 77 L.Ed.2d 300 (1983); *Drayton v. Jiffee Chem. Corp.,* 591 F.2d 352 (6th Cir.1978); 10 Moore's Federal Practice § 401.03[6] (1988) (district court has broad discretion in applying concepts of relevancy and materiality, and its ruling should not be disturbed absent abuse of discretion). Our Court clearly has failed to give "due deference" to the District Court. By its own statement, it acknowledges that it has made a "de novo review" of the lower court's sentencing conclusions as though it were reviewing a pure question of law. (Maj. Op. at 507.) Our Court, therefore, has given absolutely *no* deference to the District Court's "application of the guidelines to the facts." I believe that the "due deference" language of the statute creates a broad "abuse of discretion" standard in sentencing cases. I therefore disagree with the Court's "de novo" or "no deference" standard of review, a standard reserved for pure questions of law. This standard contravenes the plain language of the statute authorizing appellate review and historic principles of sentencing.

For the past 200 years in the United States, there has been no appellate review of the length of sentences imposed by district judges so long as the sentence imposed fell within the statutorily authorized range. For this reason, appellate courts have not developed a coherent set of sentencing principles or policies on which to rely in reviewing sentences. Neither Congress, in the new sentencing legislation, the Sentencing Commission, nor the scholarly community has supplied any such set of principles to aid appellate courts. So far as I can determine, no such principles exist. We are flying blind in this area with no instruments for navigation. Given this situation, the most appropriate role for our Court is to give the district courts wide discretion and then review their work with

"due deference" under an "abuse of discretion" standard.

In addition, we must recognize that appellate courts are remote from the setting in which district judges make sentencing decisions. We do not see or hear the witnesses or the defendant. We are removed from the emotional appeal in the case and removed from the pain and suffering that inappropriately harsh sentences can impose on a defendant. We do not see clearly the nuances of the case that are favorable to the defendant. We see only the crime in its generalized aspect. We do not see real people in their struggle to live, only abstract people—"plaintiffs" and "defendants," "appellants" and "appellees," "petitioners" and "respondents."

For these reasons, in addition to the time constraints in which we operate, I have little confidence that the decisions of appellate courts, on the basis of intricate combinations of sentencing facts developed by district judges, are likely to be wise decisions. I therefore would give great deference to the sentencing decisions of district courts.

### IV.

Congress clearly provided that the Sentencing Commission and judges should not impose a sentence of "imprisonment in cases in which the defendant is a first offender who has not been convicted of a crime of violence or an otherwise serious offense." 28 U.S.C. § 994(j) (Supp.1989).[1] In this case the District Court and the victim of the crime both agree that the crime is not sufficiently "serious" to justify imprisonment. I would give "due deference" to the District Court's conclusion, based on a consideration of the full panoply of facts before it, that this first offense is not sufficiently "serious" to justify imprisonment. I would affirm Judge Wiseman's sentence in this case because of (1) the acknowledged failure of the Sentencing Commission to take into account all of the relevant facts of this case, (2) the plain statutory language requiring "due deference" to the District Court's sentencing conclusions, and (3) the statutory language allowing "imprisonment for a first offense" only upon a finding that the offense is "serious."

### V.

Finally, purely a matter of judicial administration, I believe our Court's decision in this case, establishing a "de novo" rather than a "due deference" standard of review in guideline application cases, will lead to many more appeals, less certainty and finality, and more disparity as appellate judges impose on district judges their own various and conflicting sentencing views. An already overworked federal appellate judiciary is now being inundated with sentencing cases. The number of criminal appeals has doubled and, in some courts, tripled since the effective date of the Guidelines. From an efficiency standpoint, the best thing for the federal judicial system as a whole is for appellate judges to affirm district judges in atypical sentencing departure cases unless the sentence is clearly outside the range of reasonableness.

Today's decision, if allowed to stand, creates an inflexible sentencing system which is not in anyone's interest except perhaps prosecutors, who by their charging decisions, will effectively establish the sentence.[2] As a former federal prosecutor, I

---

**1.** This section provides:

(j) The Commission shall insure that the guidelines reflect the general appropriateness of imposing a sentence other than imprisonment in cases in which the defendant is a first offender who has not been convicted of a crime of violence or an otherwise serious offense, and the general appropriateness of imposing a term of imprisonment on a person convicted of a crime of violence that results in serious bodily injury.

**2.** A trend toward deferring to the prosecutor's judgment is rapidly being established in our Circuit. A review of sentencing departure cases in the Sixth Circuit shows a clear pattern that the prosecutor always wins. *See, e.g., United States v. Pitman,* 888 F.2d 128 (6th Cir.1989) (table reference to unpublished decision) (full text available on Westlaw); *United States v. Barnett,* 887 F.2d 1088 (6th Cir.1989) (table reference to unpublished decision) (full text available on Westlaw); *United States v. Joan,* 883 F.2d 491 (6th Cir.1989); *United States v. Seltzer,*

know that such a rigid system of sentencing can only end in failure because it gives one side in the competitive process too much power. A flexible system is best, one that relies upon an impartial judge intimately familiar with the facts of the case. We should not turn the "guidelines" intended by Congress into mechanistic rules by eliminating the liberal departure policy established by the Sentencing Commission.

881 F.2d 1077 (6th Cir.1989) (table reference to unpublished decision) (full text available on Westlaw). *But see United States v. Edwards,* 883 F.2d 76 (6th Cir.1989) (table reference to unpublished decision) (full text available on Westlaw) (upward departure held to be unwarranted).