915 F.2d 1574
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellant,
v.
Howard W. TURNER, Defendant-Appellee.
 No. 90-1277.
 United States Court of Appeals, Sixth Circuit.
 Oct. 5, 1990.
 
 Before KEITH and MILBURN, Circuit Judges, and WILLIAM K. THOMAS, Senior District Judge.*
 PER CURIAM:
 
 
 1
 The United States appeals from the district court's January 19, 1990 order sentencing Howard Turner to three years probation and assessing a total of $23,350 in fines and supervision costs, pursuant to his guilty plea. For the reasons set forth below, we AFFIRM the district court's downward departure in sentencing Turner.
 
 I.
 
 2
 On July 14, 1989, a grand jury indicted Turner, together with his co-defendants Howard Turner, Jr., Charles Stockman, William Odom, and Roy Gould, on the charge of conducting an illegal gambling business, in violation of 18 U.S.C. Sec. 1955. On October 13, 1989, Turner pled guilty without the benefit of a Rule 11 plea agreement. Turner persuaded each of his co-defendants to enter pleas of guilt, notwithstanding the fact that at least one of his co-defendants had extremely limited involvement.
 
 
 3
 Prior to October 1988, Turner was the leader of an illegal numbers operation in Flint, Michigan. Turner had as many as forty people working for him. His average daily collections were approximately $5,200.
 
 
 4
 Turner's presentence report indicates that he is a black male, fifty-nine years of age, who has resided in Flint his entire life. He retired from General Motors Corporation after 31 years of employment. He has been active in community organizations for most of his adult life.
 
 
 5
 Turner accepted responsibility for his role as a leader in the gambling operation. The presentence report indicated that Turner was statutorily eligible for probation pursuant to 18 U.S.C. Sec. 3561.[1] But under the Sentencing Guidelines, he is not eligible for probation.
 
 
 6
 Turner was assigned a base offense level of 12. U.S.S.G. Sec. 2E3.1. Due to his aggravating role as a leader and organizer, Turner's offense level was increased by four levels under U.S.S.G. Sec. 3B1.1(a). Turner was given a two-level reduction under U.S.S.G. Sec. 3E1.1 for acceptance of responsibility, because he admitted that he managed a gambling organization and he described how it operated. Turner's total offense level was 14. Turner had no prior convictions, placing him in a criminal history category I. The guidelines specify a sentence range of 15 to 21 months. U.S.S.G., Ch. 5, Pt. A, Sentencing Table.
 
 
 7
 Turner's Sentencing Memorandum urged the court to make a downward departure from the Sentencing Guidelines. Turner's counsel raised the following mitigating factors to support his argument for downward departure:
 
 
 8
 1. The crime of operating an illegal gambling enterprise is a victimless crime;
 
 
 9
 2. Turner has an excellent civic history reflected by his participation in various community organizations and service on many community boards;
 
 
 10
 3. Turner is black, and the record reflects "a great degree of disparity" in the sentencing of blacks as contrasted to the sentencing of whites for the same crime;[2] and
 
 
 11
 4. Under Michigan law, conducting a private lottery is a misdemeanor offense; therefore, had Turner been prosecuted pursuant to state law, it is likely that he would be sentenced to probation.
 
 
 12
 On January 19, 1990, the district court sentenced Turner to three years probation; he was also assessed a $20,000 fine, $3,300 for supervision costs, and $50. In imposing this sentence, the district judge made the following comments:
 
 
 13
 Defendant has had a perfectly clean record all his life. He has had no convictions of any kind. He has been, for 31 years, an employee at General Motors with evidently a very good record, now retiring with a pension. It is clear that he has been involved in lots of community work. It is a difficult question. I think I will depart downward because I think 15 months, which is the minimum that I would give if I followed the guidelines, I think is just far too much. Fifteen months imprisonment here and I have an armed robber who held up banks with a 32 month guideline, that is not up today but coming up Monday, which I am going to have to depart upward. Now to suggest 15 months for this man when an armed robber would only get 32 months just leaves me not very happy. The problem I have, and I am going to depart downward, is whether I depart downward to total probation, and that is a difficult decision to make. Let me adequately state my reasons for departing downward and then I will determine whether I am going to impose some imprisonment plus probation or whether it will be straight probation.
 
 
 14
 Now I will say much of the same, part of what I am going to say is exactly what I said with reference to the prior case. I don't think the Sentencing Commission in formulating the guidelines here, particularly the one that is as high as this one, adequately considered the mitigating aspect on prosecuting gambling offenses in a state like Michigan where, as I pointed out, not only is gambling legal, it is a state institution. It is one in which all citizens are urged by radio, television, newspaper ads and billboards to gamble, and as I said there and I say again in this case, there is an inherent hypocrisy in this situation which I think demands departure below the guidelines.
 
 
 15
 I think the community work and the steady employment of this gentleman for more than 30 years could not have been adequately considered by the Sentencing Commission in setting a sentence like this. I think that is an additional reason for downward departure. From everything I have seen, he has been an exemplary citizen who not only took care of his wife and his family and worked regularly but involved himself in all sorts of community activities, and I think that is a very important part. It is rare that I see a defendant before me with the record of 31 years of steady employment, full support of his family, and a person who is involved in the kind of community activities that he has and spent so much time in it. All these I think are important in our reasons for departing downward.
 
 
 16
 Now I recognize that the Defendant is the organizer and that has been clearly admitted by both the Defendant and his counsel, and clearly the most culpable of any of the Defendants that I have had so far. But I am inclined to think that it can be taken care of by the payment of a significant and substantial fine. So I am going to place the Defendant on probation for a total of three years. He is to pay a fine of $20,000, $3,000 supervision costs, and a $50 special assessment, all of which are to be paid within 30 days. The conditions of probation are that he shall not commit any crime, federal, state or local; that he shall abide by the standard conditions of probation recommended by the Sentencing Commission; that he is prohibited from possessing any firearms or dangerous weapons; and he shall not open any additional lines of credit without approval of the Probation Department until all costs and the fine have been paid. He shall fully provide the Probation Department with complete access to any financial information of his own that he has.
 
 
 17
 Joint Appendix at 31-34 (Sentencing Hearing Transcript).
 
 
 18
 On February 20, 1990, with the approval of the Solicitor General, the United States filed a notice of appeal from the sentence imposed upon Turner. This court has jurisdiction over the appeal of the United States pursuant to 18 U.S.C. Sec. 3742(b).
 
 II.
 A.
 
 19
 Title 18 United States Code Section 3742(b) authorizes appellate review of a sentence that "(1) was imposed in violation of law; (2) was imposed as a result of an incorrect application of the sentencing guidelines; (3) is less than the sentence established in the applicable guideline range to the extent that the sentence includes a lesser ... term of imprisonment ... than the minimum established in the guideline range." A court is required to impose a sentence within the appropriate guideline range "unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. Sec. 3553(b). "In determining whether a circumstance was adequately taken into consideration, the court shall consider only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission." Id.; United States v. Joan, 883 F.2d 491, 493-94 (6th Cir.1989). The guidelines are meant to cover the "heartland" of typical cases. Departures are warranted only for atypical cases--"one[s] to which a particular guideline linguistically applies, but where conduct significantly differs from the norm." Sentencing Guidelines Manual, Ch. 1 at 1.6 (Nov.1989). This Court has adopted the First Circuit's reasoning that "there must be something 'special' about a given offender, or the accouterments of the crime committed, which distinguishes the case from the mine-run for that offense." United States v. McDowell, 902 F.2d 451, 455 (6th Cir.1990) (quoting United States v. Aguilar-Pena, 887 F.2d 347, 350 (1989)). The court must state the "specific reason" for imposition of a sentence outside the guideline range. 18 U.S.C. Sec. 3553(c)(2). Mistretta v. United States, 109 S.Ct. 647, 652 (1989); United States v. Newsome, 894 F.2d 852, 856 (6th Cir.1990).
 
 
 20
 This Court has adopted a three-step procedure to be used in determining whether a district court has appropriately departed from the guidelines. United States v. Brewer, 899 F.2d 503, 506 (6th Cir.1990); accord United States v. Diaz-Villafane, 874 F.2d 43, 49 (1st Cir.1989). First, the reviewing court must determine whether the case is sufficiently unusual to warrant departure. This determination is purely a question of law. Second, the reviewing court must determine whether such unusual circumstances exist. This is a factual determination which may only be set aside for clear error. See 18 U.S.C. Sec. 3742(e). Third, the reviewing court must determine whether the direction and degree of departure were reasonable. 18 U.S.C. Sec. 3742(e)(3). Brewer, 899 F.2d at 506. If this Court concludes that the district court's departure was based on factors adequately considered by the guidelines, then the review may end. United States v. Hays, 899 F.2d 515, 519 (6th Cir.1990).
 
 B.
 
 21
 The United States argues that the district court erred in relying on factors considered within the guidelines as a basis for downward departure. While we assign error to the district court's reliance upon certain factors, we find that the district court properly determined that Turner's substantial civic involvement warrants a downward departure from the Sentencing Guidelines.
 
 
 22
 The guidelines clearly state that a defendant's age, employment record, family ties and responsibilities, and community ties are not "ordinarily relevant" in determining whether a sentence should be outside the guideline range. See U.S.S.G. Secs. 5H1.1, 5H1.5, 5H1.6. Moreover, Turner's "perfectly clean record" was reflected in his criminal history Category I. "The lower limit of the range for a Category I criminal history is set for a first offender with the lowest risk of recidivism. Therefore, a departure below the lower limit of the guideline range for a Category I criminal history on the basis of the adequacy of criminal history cannot be appropriate." U.S.S.G. Sec. 4A1.3.
 
 
 23
 The record does not suggest that the Turner's age, his employment record, his family ties and responsibilities--factors upon which the district court based, in part, its downward departure--are so exceptional that downward departure is warranted. Cf. Brewer, 899 F.2d at 508 ("While the record indicates that defendants enjoy community support, are still involved in the community, and have children at home, these circumstances were adequately taken into consideration by the Commission when formulating the guidelines. These factors ... are not ordinarily exceptional, and therefore, a downward departure based on these factors is usually not warranted."). Therefore, the district court erred in basing its departure on Turner's age, employment record, and family ties and responsibilities.
 
 
 24
 The district court found that Turner's community work could not have been adequately considered by the Sentencing Commission in setting the sentence. Characterizing Turner as "an exemplary citizen," the district court noted that he has rarely seen a defendant with a record of community involvement equal to Turner's.[3] We find Turner's community involvement sufficiently unusual to warrant departure.
 
 
 25
 The extent of Turner's civic and community involvement is sufficiently distinguishable from the facts in Brewer where this Court found that the district court "failed to point out why the defendants' community support ... were 'substantially in excess' of those generally involved in other bank teller embezzlement cases." Brewer, 899 F.2d at 508. In the present case, Turner's community and civic activities are "substantially in excess" of most individuals regardless of their criminal history. It seems ill-conceived to deprive the Flint community of Turner's service by sentencing him to prison when other means of punishment are available.
 
 
 26
 Moreover, Turner's community activities transform this case from an ordinary to an atypical one. The Sentencing Commission's policy statement advises that "[w]hen a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted...." United States Sentencing Commission, Guidelines Manual, 4(b), Policy Statement (Nov.1989). The policy statement further indicates that the Commission "does not intend to limit the kinds of factors (whether or not mentioned anywhere else in the guidelines) that could constitute grounds for departure in an unusual case." Id.; see also Brewer, 899 F.2d at 513 (Chief Judge Merritt, dissenting). Thus, the district court did not err in relying on Turner's civic involvement as a basis for its downward departure. Moreover, the degree of the departure was reasonable under the circumstances.
 
 C.
 
 27
 The district court's only other reason for its downward departure was that the Sentencing Commission did not adequately consider the mitigating aspect of prosecuting gambling offenses in states where state sponsored gambling is legal. The district court is correct in finding that neither the Sentencing Guidelines the policy statements, nor the official commentary speak to this issue. This Court, however, has found that Michigan's enactment of gambling laws is "clearly a proper exercise of the state's police power in an effort to promote the public welfare." United States v. Washington, 879 F.2d 1400, 1401 (6th Cir.1989) (holding Michigan statutes banning private lotteries do not violate due process). The Washington court reasoned that the Michigan legislature's choice to attack only the dangers presented by private lotteries is rational. Id. Therefore, "Michigan's sponsorship of a state lottery does not vitiate the state's legitimate objections to private lotteries." Id. While Washington addresses the state's interest in banning private lotteries, it has a limited application to the issue of whether the Sentencing Guidelines adequately considered the mitigating aspect of state sponsored gambling on sentences for private gambling activity. The government contends that the goal of national uniformity in sentencing would be seriously undermined if the severity of the sentence for the same behavior were to vary according to whether there is a state-run lottery in the jurisdiction where a defendant is sentenced.
 
 
 28
 Departure from the guidelines is warranted only when there is a special circumstance which distinguishes the case from others involving the same offense. See McDowell, 902 F.2d at 455. The prevalence of state-sponsored lotteries throughout the country precludes a determination that this case is atypical because of Michigan's lottery. Therefore, the existence of Michigan's lottery is not sufficiently unusual to warrant departure.
 
 
 29
 Finally, the government argues that the court's personal displeasure with Michigan's state-run lottery is not a proper factor on which a downward departure can be based. Aguilar-Pena, 887 F.2d at 353 ("Judicial dissatisfaction alone, no matter how steeped in real-world wisdom, cannot be enough to trigger departures, less the entire system crumble."). However, the record in Turner's case does not support a finding that the district court's displeasure alone was the basis for its downward departure. Therefore, we will refrain from addressing this contention further.
 
 III.
 
 30
 Turner's exceptional community involvement was not adequately taken into consideration under the Sentencing Guidelines. On the sole basis of Turner's community activity, we find the district court's downward departure appropriate. We, therefore, AFFIRM the Judgment Including Sentence under the Sentencing Reform Act of The Honorable Horace W. Gilmore, United States District Judge for the Eastern District of Michigan.
 
 
 31
 Judge Thomas would reverse and respectfully dissents.
 
 
 
 *
 The Honorable William K. Thomas, United States District Judge for the Northern District of Ohio, sitting by designation
 
 
 [1]
 18 U.S.C. Sec. 3561 provides:
 A defendant who has been found guilty of an offense may be sentenced to a term of probation unless--
 (1) the offense is a Class A or Class B felony and the defendant is an individual;
 (2) the offense is an offense for which probation has been expressly precluded; or
 (3) the defendant is sentenced at the same time to a term of imprisonment for the same or a different offense.
 
 
 [2]
 Turner's counsel indicated that only one person in Genesee County has been sentenced to prison for violating 18 U.S.C. Sec. 1955. This person was black, and he had operated an illegal gambling organization for twenty-five years. Defendant's Sentencing Memorandum at 8
 On appeal, Turner acknowledges that the Sentencing Guidelines do not permit the sentencing judge to consider race as a factor in sentencing, since one of the purposes of developing the guidelines was to eliminate the gross racial disparities in sentencing. However, Turner argues that the disparity evident in sentencing blacks for operating an illegal gambling enterprise is a factor supporting downward departure.
 As the district judge did not rely on the alleged racial disparity in sentencing, this issue is not properly before the Court in its review of whether the downward departure was justified.
 
 
 [3]
 Turner is engaged in an exceptional number of civic activities which include:
 
 
 [1]
 Member, Quinn Chapel AME Methodist Church for more than 50 years;
 
 
 [2]
 Member, UAW 659 Committee for 25 years; Unit Executive Board; UAW Convention Delegate;
 
 
 [3]
 President, Veterans Club;
 
 
 [4]
 Former Member, Flint Optimist Club;
 
 
 [5]
 Member, John W. Stevens Lodge, Omen Temple, Saginaw Valley Consistory, Prince Hall FAM;
 
 
 [6]
 Member, 7th District Black Caucus;
 
 
 [7]
 President, UPCA Housing Corporation;
 
 
 [8]
 Member, NAACP;
 
 
 [9]
 Member, Urban League of Flint;
 
 
 [10]
 Member, Veterans of Foreign Wars, George Carver Post;
 
 
 [11]
 Delegate, State Democratic Conventions;
 
 
 [12]
 Board of Directors, Dan Haley Scholarship Fund; and
 
 
 [13]
 Member, YMCA
 Additionally, Turner was founder of a service organization for the mentally disturbed and founder of a Korean war veterans organization, Veterans for the Promotion of Civic Activities.