**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Roger V. CHASTAIN, Defendant– Appellant.**

No. 95–10267.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 12, 1996.

Decided May 17, 1996.

Ann C. McClintock and Marnie L. Sayles, Assistant Federal Public Defenders, Sacramento, California, for defendant-appellant.

Benjamin B. Wagner, Assistant United States Attorney, Sacramento, California, for plaintiff-appellee.

Before CHOY, BEEZER and HAWKINS, Circuit Judges.

MICHAEL DALY HAWKINS, Circuit Judge:

Appellant Roger V. Chastain ("Chastain") was convicted pursuant to 26 U.S.C. § 7203 of five misdemeanor counts of willfully failing to timely pay income taxes. Chastain contends (1) the magistrate judge who presided over Chastain's trial abused his discretion by failing to instruct the jury regarding the relationship between § 7203's "willfulness" requirement and Chastain's "good faith" defense; (2) the magistrate judge abused his discretion by refusing to strike the government's allegedly inaccurate summary of the evidence during closing argument; and (3) the district court erred in vacating the magistrate judge's downward sentencing departures. We affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

Chastain is an attorney in Northern California. Evidence at trial established that although he filed accurate tax returns for years 1984–1989, he failed to pay taxes totalling over $100,000. Despite making over $50,000 a year and taking at least five trips to Europe between 1985 and 1989, Chastain told the IRS he did not have enough money to pay his taxes.

In September 1993, Chastain was charged with five misdemeanor counts of willfully failing to timely pay income tax. Chastain consented to proceed before a magistrate judge and pleaded not guilty. The focus of the trial was the "willful" element of the offense. Perhaps elevating hope over common sense, Chastain contended that the "willful" element of § 7203 was negated by his good faith belief that he could treat the IRS "like any other general creditor."

The jury convicted Chastain on all counts. At sentencing,[1] the magistrate granted a two-level reduction in the base offense level for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1. The magistrate then departed downward two months from the low end of the 4–10 month guideline range in order to facilitate the payment of approximately $118,000 restitution to the IRS. Chastain appealed his conviction to the district court, and the government cross-appealed the sentence.

The district court affirmed Chastain's conviction after rejecting his claim of instructional error on the willfulness element of § 7203. The district court granted the gov-

---

1. Chastain was sentenced under the 1992 version of the Guidelines. Any reference in this disposi- tion to the Guidelines is to the 1992 edition.

ernment's cross-appeal and vacated the magistrate's two-level reduction for acceptance of responsibility and the magistrate's two-month downward departure.[2]

Chastain timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm the district court.

## II. DISCUSSION

### A. Jury Instructions

■ Chastain contends that the magistrate judge should have instructed the jurors that a good-faith belief that Chastain was not violating the law would "directly negate" the willfulness element of § 7203. We review whether a trial court's instructions adequately covered a defendant's proffered defense de novo, United States v. Warren, 25 F.3d 890, 895 (9th Cir.1994), and review a district court's formulation of jury instructions for an abuse of discretion, United States v. Vaandering, 50 F.3d 696, 702 (9th Cir.1995).

■ The magistrate judge instructed the jury that accepting Chastain's good-faith defense would require acquittal. The instruction gave the government the burden of proving Chastain did not have a good-faith belief and explicitly included the government's burden on the good faith issue among the other elements of the offense. The instruction adequately covered Chastain's good-faith defense, and the magistrate did not abuse his discretion in declining to further instruct the jury regarding the relationship between willfulness and good faith.

### B. Closing Argument

■ Chastain contends that during closing argument the government mischaracterized evidence regarding Chastain's use of his disposable income. Chastain specifically challenges the prosecutor's assertion that "defendant got a windfall of $80,000, threw a bone to the IRS, went out and spent over $60,000 buying a new car, a bunch of furniture." The trial court's decision to allow a jury to consider comments made by one party in closing argument to which the other party objects is reviewed for an abuse of discretion. United States v. Diaz, 961 F.2d 1417, 1418 (9th Cir.1992).

Chastain's argument is without merit. The prosecutor's assertions were reasonable inferences drawn from trial testimony, including the testimony of Chastain himself. See United States v. Birges, 723 F.2d 666, 671–72 (9th Cir.) (noting that attorneys may draw reasonable inferences from the evidence during closing argument), cert. denied, 466 U.S. 943, 104 S.Ct. 1926, 80 L.Ed.2d 472, and cert. denied, 469 U.S. 863, 105 S.Ct. 200, 83 L.Ed.2d 131 (1984). The prosecutor's reference to an $80,000 "windfall" related to Chastain's share of a client's award in a personal injury case. The prosecutor's characterization of Chastain's effort to "throw the IRS a bone" referred to Chastain's attempt, after he had received the $80,000, to settle his debt with the IRS for $20,000. Finally, the reference to a new car and new furniture came from the testimony of IRS Agent Sandra Mohan, who testified that Chastain told her after he had received the $80,000 that "he had purchased a brand-new 1993 automobile that he paid cash for. He had gotten furniture. He sent money to his kids, paid other creditors, and he had some money left over he wanted to ask the IRS to consider compromising his liability with." Because each of the alleged mischaracterizations finds support in the record, the trial court did not abuse its discretion in allowing them.

### C. Sentencing Guidelines

#### 1. Two-Level Reduction for Acceptance of Responsibility

■ At sentencing, the magistrate granted Chastain's request for a two-level sentence reduction based on the § 3E1.1 Acceptance of Responsibility guideline. The magistrate judge based his § 3E1.1 two-level reduction on three factors: (1) Chastain demonstrated an acceptance of responsibility by never contesting that he owed taxes, (2) deterrence interests had already been served by the negative publicity and legal fees associated with Chastain's case, and (3) a longer

---

**2.** On remand, Chastain was resentenced to four months in prison and a one-year term of supervised release. The magistrate stayed his incarceration pending appeal.

sentence would damage his law practice and thus constitute a "financial death penalty." The sentencing court's interpretation and application of the Sentencing Guidelines are reviewed de novo. *United States v. Basinger*, 60 F.3d 1400, 1409 (9th Cir.1995).

The reasons cited by the magistrate in support of his decision to grant an acceptance of responsibility reduction are not legitimate grounds for a § 3E1.1 reduction. Although it is true that Chastain never denied that he had tax liability, Chastain never accepted responsibility for the offense of willful failure to pay. *See* U.S.S.G. § 3E1.1(a) (providing that defendant is eligible for reduction only if defendant accepts responsibility for his criminal conduct). Chastain's failure to accept responsibility for his crime was manifest in his decision to take the case to trial, where he vigorously denied the "willful" element of the offense. *See* U.S.S.G. § 3E1.1 n. 2 (specifying that only in "rare situations" will a defendant qualify for a reduction after "put[ting] the government to its burden of proof at trial by denying the essential factual elements of guilt").[3]

■ The other grounds upon which the magistrate based his reduction are even more suspect. Whether deterrence interests have been served by other means (public approbation, financial loss, etc.) may be relevant to a § 5K2.0 departure, but the § 3E1.1 acceptance of responsibility guideline does not permit a sentence reduction for circumstances unrelated to whether Chastain acknowledged his guilt. The final ground cited by the magistrate, Chastain's payment of restitution, is mentioned in § 3E1, but only in a very narrow sense. Application Note 1(b) permits the judge to consider a defendant's "voluntary payment of restitution prior to adjudication of guilt" in determining whether a defendant has clearly accepted responsibility for his criminal acts. In this case, Chastain made no voluntary restitution. Because the acceptance of responsibility guideline does not permit a reduction to facilitate post-conviction payment of restitution,

the magistrate erred in using § 3E1.1 in an attempt to avoid a "financial death penalty."

In sum, Chastain's conduct fell well short of manifesting the "clear acceptance of responsibility" required by § 3E1.1.

### 2. Departure to Facilitate Payment of Restitution

After granting a two-level departure for acceptance of responsibility, the magistrate departed downward an additional two months in order to facilitate payment of restitution. In lieu of a Guideline provision that explicitly permits departure based on the amount of restitution required, Chastain relies on Guideline § 5K2.0 in combination with 18 U.S.C. § 3553(a)(7) to justify the magistrate's decision to depart. Guideline § 5K2.0 permits departure based on " 'mitigating circumstance[s] of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission.' " U.S.S.G. § 5K2.0 (quoting 18 U.S.C. § 3553(b)).

■ The sentencing judge may not depart unless he or she has legal authority under the Guidelines to do so. *United States v. Lira–Barraza*, 941 F.2d 745, 746 (9th Cir. 1991) (en banc) (noting that "legal authority" is first of three-part test for departure under the Guidelines). Although in *United States v. Miller*, 991 F.2d 552 (9th Cir.1993), and *United States v. Berlier*, 948 F.2d 1093 (9th Cir.1991), we analyzed the related question of the scope of § 3E1.1 departures based on pre-trial restitution efforts, we have not decided under what, if any, circumstances a § 5K2.0 departure is appropriate to permit a defendant to make restitution payments after conviction.

■ We join the Second, Fourth, Sixth, and Seventh circuits in holding that a sentencing judge may not depart to facilitate payment of restitution. *See United States v. Broderson*, 67 F.3d 452, 458 (2d Cir.1995) ("Ordinarily, payment of restitution is not an appropriate basis for downward departure under Section 5K2.0."); *United States v. Bolden*, 889 F.2d 1336, 1340 (4th Cir.1989)

---

3. Because Chastain attacked the government's proof on willfulness, which is a specific, factual element of a § 7203 offense, he was not in one of

the "rare situations" that would qualify him for a reduction under Guideline § 3E1.1. *See* U.S.S.G. § 3E1.1 n. 2.

("[W]e do not think that the economic desirability of attempting to preserve [defendant's] job so as to enable him to make restitution warrants a downward adjustment from the guidelines."); *United States v. Seacott,* 15 F.3d 1380, 1388–89 (7th Cir.1994) (holding that restitution is not a proper ground for departing downward from the Guidelines range); *United States v. Harpst,* 949 F.2d 860, 863 (6th Cir.1991) (holding that district court may not depart downward to preserve defendant's ability to make restitution). Guideline § 5K2.0 requires that the mitigating circumstance that forms the basis for departure must be "of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission." We have held, however, that restitution was taken into consideration by the Commission under Guideline § 3E1.1, which permits a downward departure when voluntary restitution paid before trial demonstrates an acceptance of responsibility. *See Miller,* 991 F.2d at 553 ("The Sentencing Commission considered the possibility that a defendant's payment of restitution might be a mitigating factor [in § 3E1.1].... A court's discretion in departing because of restitution is therefore constrained [by the requirements of § 3E1.1]."); *see also United States v. Crook,* 9 F.3d 1422, 1426 (9th Cir.1993) ("We recently held in [*Miller*] that extraordinary restitution is a basis for downward departure only 'to the extent it shows acceptance of responsibility.'" (quoting *Miller*)), *cert. denied,* —— U.S. ——, 114 S.Ct. 1841, 128 L.Ed.2d 467 (1994). Our determination that the Commission took restitution into consideration in § 3E1.1 is in accord with the decisions of other circuits that have considered the relationship between § 3E1.1 and a court's § 5K2.0 authority to depart on the basis of restitution. *See, e.g., Broderson,* 67 F.3d at 458 ("Ordinarily, payment of restitution is not an appropriate basis for downward departure under Section 5K2.0 because it is adequately taken into account by Guidelines Section 3E1.1, dealing with acceptance of responsibility."); *Seacott,* 15 F.3d at 1388 (citing § 3E1.1 in support of the proposition that Commission considered and rejected restitution as a mitigating circumstance). Because restitution was adequately taken into consideration by the Sentencing Commission as a ground for departure, a § 5K2.0 departure based on restitution is not legitimate.

In addition to the explicit incorporation of restitution considerations into § 3E1.1, the Commission also implicitly considered departures based on ability to pay restitution in formulating Guideline § 5H1.10. Section 5H1.10, a Guideline policy statement, provides that socio-economic status is "not relevant in the determination of a sentence." Allowing a sentencing judge to reduce a defendant's sentence to preserve a defendant's job and facilitate restitution would introduce precisely the type of socio-economic disparity into sentencing that the Guidelines were designed to eliminate. *Cf. United States v. DeMonte,* 25 F.3d 343, 347 (6th Cir.1994) ("In accordance with U.S.S.G. § 5H1.10, we may not sentence a poor convict more harshly than a rich convict simply because the rich convict is better able to make restitution."); *Harpst,* 949 F.2d at 863 ("Furthermore, it seems that the Sentencing Commission considered including the ability to make restitution as a possible mitigating circumstance, yet rejected it as a basis for departure from the guidelines." (citing U.S.S.G. § 5H1.10)).

Finally, the Commission's decision to separate the calculation of restitution from the sentencing determination evinces an intent to prevent restitution considerations from influencing the guideline sentence. Although ability to pay and the "financial needs of the defendant and his dependents" must be considered by a sentencing judge in fashioning a restitution order, *see* Commentary to U.S.S.G. § 5E1.1, the restitution guideline found in § 5E is entirely independent of the § 3E1.1 reduction and § 5K2.0 departure provisions. *Cf. Crook,* 9 F.3d at 1426 (examining structure of Guidelines to determine whether extraordinary forfeiture is a valid ground for downward departure).

 18 U.S.C. § 3553(a)(7) is not in conflict with the proposition that restitution is not a legitimate ground for departure from the guideline sentencing range. Section 3553(a)(7) instructs that "[t]he court, *in determining the particular sentence to be imposed,* shall consider—... (7) the need to

326

provide restitution to any victims of the offense." (emphasis added). Section 3553(a)(7) applies to the sentencing determination *once the sentencing range has been established.* *See Bolden,* 889 F.2d at 1341 (holding that although restitution is not valid ground for a § 5K2.0 departure, 18 U.S.C. § 3553(a)(7) permits the sentencing court to consider restitution "in deciding what sentence within the guidelines to impose"). Departure from the applicable sentencing range is controlled not by § 3553(a)(7), but rather by § 3553(b), which contains the familiar refrain that departure from the guideline range is appropriate only in the presence of aggravating or mitigating circumstances of a kind or degree not considered by the Commission. In short, § 3553(a)(7) applies to setting a sentence *within* a guideline range, but may not be used as a basis for departure *from* a guideline range.

On the foregoing bases—§ 3E1.1's inclusion of restitution as a sentencing factor, § 5H1.10's exclusion of socio-economic status as a *guideline variable,* and the Commission's decision to separate the calculation of restitution from the guideline range determination—we hold that the magistrate judge had no authority to depart to facilitate the payment of restitution. Accordingly, the district court's decision to vacate the magistrate's two-month departure is affirmed.

AFFIRMED.