116 F.3d 487
 UNITED STATES of America, Plaintiff-Appellee,
v.
Jose Farias OCHOA, Defendant-Appellant.
 No. 96-50007.
 United States Court of Appeals, Ninth Circuit.
 Argued and submitted January 7, 1997.
Decided June 9, 1997.
 
 1
 Appeal from the United States District Court for the Central District of California Manuel L. Real, District Judge, Presiding
 
 
 2
 Before: Fletcher, Trott, Circuit Judges, and Jenkins,** Senior District Judge.
 
 
 3
 MEMORANDUM*
 
 
 4
 Jose Farias Ochoa ("Ochoa") appeals his conviction following a jury trial for conspiracy to possess and possession of pseudoephedrine in violation of 21 U.S.C. §§ 846 & 841(d)(2). Ochoa argues that the district court erred by: 1) improperly admitting drug courier profile evidence and expert opinion testimony on Ochoa's guilt; 2) refusing to admit Ochoa's school records because they were in Spanish; and 3) refusing to give a cooperating witness instruction at the end of trial. We affirm.
 
 I. Admission of Officer Testimony
 
 5
 Ochoa argues that the district court improperly permitted narcotics officers to testify as experts that Ochoa and Morales's driving techniques and their possession of the items found in the Sentra were consistent with the modus operandi of drug dealers. Ochoa never objected to the officer's testimony on the grounds he raises on appeal. Thus, we review for plain error. United States v. Gomez-Norena, 908 F.2d 497, 499-500 (9th Cir.1990).
 
 
 6
 "[W]e have consistently held 'that government agents or similar persons may testify as to the general practices of criminals to establish the defendants' modus operandi.' " United States v. Gil, 58 F.3d 1414, 1422 (9th Cir.), (quoting United States v. Johnson, 735 F.2d 1200, 1202 (9th Cir.1984)), cert. denied, 116 S.Ct. 430 (1995). The testimony admitted in this case was similar to modus operandi testimony that we allowed in Gil and other cases. The district court did not plainly err in admitting it.
 
 
 7
 Ochoa also argues that the expert testimony was inadmissible under Federal Rule of Evidence 704(b) because it constitutes testimony on his state of mind and his guilt. Officers Bolanos and Willhite merely described the typical practices of drug traffickers. Thus, their testimony did not invade the province of the jury and was properly admitted. See United States v. Lockett, 919 F.2d 585, 590-91 (9th Cir.1990). Although Officer Rinks's testimony verges on an opinion as to the likelihood of Ochoa's guilt, any error in admitting this testimony does not rise to the level of plain error. See United States v. Stewart, 770 F.2d 825, 831 (9th Cir.1985); United States v. Alonso, 48 F.3d 1536, 1541 (9th Cir.1995).
 
 
 8
 Finally, Ochoa incorrectly argues that the Supreme Court's decision in Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579 (1993), governs the admission of expert testimony regarding the modus operandi of criminals. Because the expert testimony in this case constitutes specialized knowledge of law enforcement, not scientific knowledge, the Daubert standards for admission simply do not apply. United States v. Cordoba, No. 95-50492, slip op. at 107 (9th Cir. Jan. 7, 1997).
 
 II. Refusal to Admit School Records
 
 9
 The district court's error in refusing to admit the records on the ground that they were in Spanish was harmless. The school records, although relevant, did not offer meaningful evidence of Ochoa's innocence. They merely showed that he had enrolled to take classes in the class period following his arrest. By contrast, the evidence against Ochoa, including the testimony of officers, the items seized from the Sentra and from his person, and the testimony of Flores, convincingly demonstrated his guilt.
 
 III. Refusal to Repeat Instruction
 
 10
 We review a district court's formulation of jury instructions for abuse of discretion. United States v. Chastain, 84 F.3d 321, 323 (9th Cir.1996). We also review the district court's decision to give an instruction before or after the arguments are completed or at both times for an abuse of discretion. See Fed.R.Crim.P. 30. The cooperating witness instruction given at the beginning of trial sufficiently and correctly instructed the jury as to how they should judge the credibility of a cooperating witness. See United States v. Hernandez-Escarsega, 886 F.2d 1560, 1576 (9th Cir.1989); United States v. Tousant, 619 F.2d 810, 812 (9th Cir.1980). Because the jury was adequately informed of the credibility issues surrounding government informants, the district court did not abuse its discretion by refusing to repeat the instruction at the end of trial.
 
 AFFIRMED
 
 11
 JENKINS, District Judge, concurring.
 
 
 12
 I join in the memorandum disposition affirming the district court's judgment, but write separately in an attempt to clarify.
 
 Rule 702 and Daubert
 
 13
 Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony in civil and criminal trials:
 
 
 14
 If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
 
 
 15
 In Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579 (1993), the Supreme Court read Rule 702 to say that "the trial judge must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." Id. at 592 (footnotes omitted).
 
 
 16
 When faced with a proffer of expert testimony, the district court's inquiry under Rule 702 thus is three-fold: the court must determine whether the expert witness (1) is qualified and (2) has specialized knowledge that (3) will "assist the trier of fact to understand the evidence or to determine a fact in issue." The trial court exercises broad discretion in determining whether the proposed expert is qualified by "knowledge, skill, experience, training, or education." Next the court decides whether the proposed subject matter of the expert testimony concerns "scientific, technical, or other specialized knowledge." Finally, "the court performs a gatekeeping function to ascertain whether the testimony is helpful to the trier of fact, i.e., whether it rests on a reliable foundation and is relevant to the facts of the case." Bogosian v. Mercedes-Benz of North America, Inc. 104 F.3d 472, 476 (1st Cir.1997) (citations omitted).
 
 
 17
 Ochoa asserts that Daubert governs the admissibility of expert testimony regarding the modus operandi of criminals. The majority rejects Ochoa's assertion because "the Daubert standards for admission simply do not apply" to "specialized knowledge of law enforcement, not scientific knowledge."[1]
 
 
 18
 Yet Rule 702 applies to all expert testimony and requires the trial court to determine at the outset, pursuant to Rule 104(a), whether the witness is proposing to testify to "scientific, technical, or other specialized knowledge" and whether the witness is qualified as an expert by "knowledge, skill, experience, training, or education." Then, as gatekeeper, the trial court "must ensure that the proposed expert testimony is relevant to the task at hand," Daubert v. Merrell Dow Pharmaceuticals, Inc., 43 F.3d 1311, 1315 (9th Cir.) (on remand) ("Daubert II "), cert. denied, 116 S.Ct. 189 (1995).
 
 
 19
 Daubert and "Specialized Knowledge"
 
 
 20
 Daubert suggests that the term "knowledge" itself "connotes more than subjective belief and unsupported speculation. The term 'applies to any body of known facts or to any body of ideas inferred from such facts or accepted as truths on good grounds." ' 509 U.S. at 590 (quoting Webster's Third New International Dictionary 1251 (1986)).[2] In evaluating the admissibility of testimony as to technical or other specialized knowledge, the trial court in each instance must examine whether what is proffered as knowledge truly deserves the label, and must ask "does this particular expert have sufficient specialized knowledge to assist the jurors in this case?" 3 Jack Weinstein & Margaret Berger, Weinstein's Evidence: United States Rules p 702, at 702-9 (1995). Indeed, "the trial judge cannot ... make a determination as to admissibility without investigating the competence the particular proffered expert would bring to bear on the issues. Only then will the judge be able to decide whether the test of Rule 702--assistance to the trier of fact--has been satisfied." Id. p 702, at 702-60.
 
 
 21
 Specialized Knowledge: "What does he know?"
 
 
 22
 In this instance, the expert testimony ostensibly involved "specialized knowledge of law enforcement," or more precisely, specialized knowledge of human behavior patterns characteristic of the ongoing perpetration of certain narcotics trafficking crimes.
 
 
 23
 Detective Luis Bolanos of the Riverside County Sheriffs Department testified that he had served as an investigator for three years and was assigned to the department's major narcotics unit, that he had received approximately 300 hours of training from various agencies regarding "the trafficking, manufacturing, and sales and personal use of narcotics," including specific training involving methamphetamine, and that he had investigated "over a thousand" cases involving methamphetamine or its chemical precursor, pseudoephedrine. Investigator Charles Wilhite, a fiveyear veteran of the Riverside County Sheriffs Department also assigned to its major narcotics unit, testified to having investigated "several hundred" methamphetamine cases. Sergeant Steve Rinks, a fifteen-year veteran of the Riverside County Sheriffs Department, testified that he supervised the Special Investigations Bureau Narcotics Unit and had investigated "[i]n excess of a hundred" cases involving methamphetamine or pseudoephedrine.[3]
 
 
 24
 Assisting the trier of fact: "How does it help?"
 
 
 25
 Over scattered defense objections as to foundation or speculation, Detective Bolanos testified that prior to their arrest, the defendants had engaged in "counter surveillance" driving, and that when arrested, the defendants were found to possess certain items.[4] all of which he testified were consistent with narcotics trafficking, particularly the manufacture of methamphetamine. Investigator Wilhite testified that he had observed Ochoa and a companion "looking all around" as they traveled to Santa Aria in a car, behavior which he testified was consistent with "the people I followed before who were involved in narcotics activity" and who "always seem to be looking all around to see who might be following them or who might be there." When Sergeant Rinks was asked whether anything about the amount of money orders and cash found in Ochoa's possession at the time of his arrest "and/or the way in which the money was bundled ... suggested to you that the defendant was involved in drug trafficking," he responded that the amount of cash and money orders "would lead us to believe ... that he was probably involved with some type of narcotics activity."
 
 
 26
 The majority turns aside Ochoa's present objections to the admission of this expert testimony as not amounting to plain error, explaining that the challenged testimony represented proper evidence as to modus operandi, not improper evidence based on a "drug profile."[5]
 
 Rule 702 and Modus Operandi Evidence
 
 27
 This court's prior cases have addressed two types of modus operandi evidence: (1) evidence of an individual modus operandi, or "signature" evidence, see, e.g., United States v. Momeni, 991 F.2d 493, 494 (9th Cir.1993); and (2) evidence of a common modus operandi, shown by testimony as to "the general practices of criminals," which ostensibly "helps the jury to understand complex criminal activities, and alerts it to the possibility that combinations of seemingly innocuous events may indicate criminal behavior." United States v. Johnson, 735 F.2d 1200, 1202 (9th Cir.1984). As the majority points out, "In a series of cases, we have upheld admission of a law enforcement officer's expert testimony that the defendant's activities indicated that he acted in accordance with usual criminal modus operandi." United States v. Espinosa, 827 F.2d 604, 612 (9th Cir.1987), cert. denied, 485 U.S. 968 (1988); United States v. Taren-Palma, 997 F.2d 525, 534-35 (9th Cir.1993) (law enforcement officers may give expert testimony that a defendant's actions, were consistent with a usual criminal modus operandi), cert. denied, 511 U.S. 1071 (1994).
 
 
 28
 This court's prior cases discussing common modus operandi do not suggest that the district court serves any less as gatekeeper under Rule 702 when law enforcement officers testify, or that the standards for admissibility of "technical or other specialized knowledge" under that rule are somehow relaxed when dealing with common modus operandi evidence. To the contrary, both the importance of assessing specialized knowledge and helpfulness and the district court's role as gatekeeper under Rule 702 find recognition in this court's cases years before Daubert.
 
 
 29
 For example, in United States v. Bosch, 914 F.2d 1239, 1242 (9th Cir.1990), the defendant asserted that the district court had improperly allowed an IRS special agent "to testify beyond his expertise" concerning whether the defendant's activities "aided and abetted the distribution of cocaine." According to the defendant, "under Fed.R.Evid. 702, Newbrough should not have been allowed to opine on a subject which was not within his expertise"--an objection going to the witness' specialized knowledge of narcotics trafficking. Id. "Because Newbrough had training and experience in conducting narcotics investigations and explained a basis for his opinion that would help the jury determine Bosch's role in the charges offense," we concluded, "the district court did not abuse its discretion by admitting the testimony." Id at 1243.
 
 
 30
 In contrast, United States v. Booth 669 F.2d 1231 (9th Cir.1981), affirmed the trial court's exclusion of expert testimony concerning the absence of fingerprints in a bank robbery get-away vehicle because of the government's failure to make a preliminary showing (1) that the witness had expert knowledge of the reason no fingerprints were found on the vehicle and (2) that the testimony would be helpful: "The court found this testimony was irrelevant because, in the absence of any showing by the government that this was Booth's modus operandi, it did not tie Booth to the robbery." Id. at 1240. Moreover, "[t]he trier of fact is capable of inferring why no fingerprints were found without the assistance of expert testimony." Id.
 
 
 31
 In each case, the court measured the admissibility of the proffered expert testimony according to its specialized knowledge and helpfulness, consistent with the requirements of Rule 702 as recently amplified in Daubert.[6]
 
 
 32
 In saying that "the Daubert standards for admission simply do not apply" to "specialized knowledge of law enforcement," we cannot be suggesting that the district court examine less rigorously the specialized knowledge underlying proffered nonscientific testimony, or that the district court may abdicate its role as gatekeeper in making the threshold determination whether that proffered testimony "will assist the trier of fact to understand the evidence or to determine a fact in issue" where the subject matter does not depend upon the scientific method. No less than scientific evidence, the district court must ask of proffered expert testimony as to technical or other specialized knowledge, "How does it help?" Following the example of Daubert, the court's Rule 702 inquiry must in each instance be thoughtful, reasoned, and exacting.
 
 
 33
 In this case, the district court made its admissibility determinations concerning the experts' specialized knowledge and helpfulness under Rule 702 "on the fly" in response to defense objections raised during the actual presentation of the testimony to the jury. Ruling on the objections as they were made during direct examination of the experts afforded the district court little opportunity to elaborate upon its reasoning in applying Rule 702.
 
 
 34
 The preliminary determination contemplated by Rules 702, 104, and even 403, may be short-circuited where the question of admissibility arises for the first time during trial. Contemporaneous trial objections offer little time for thoughtful reflection. Yet the potential for prejudice from this kind of testimony warrants caution, and caution calls for thoughtful reflection. United States v. Gutierrez, 995 F.2d 169 (9th Cir.1993), affirmed the admissibility of a police officer's expert opinion that--like Investigator Wilhite's testimony--a defendant's observed actions were "furtive," but warned:
 
 
 35
 Nonetheless, a trial court should not routinely admit this type of opinion testimony without carefully weighing the testimony's probative value against its possible prejudicial effect.... "This weighing is particularly important with the expert testimony of a law enforcement officer, which often carries an aura of special reliability and trustworthiness." Id at 613 (internal quotations omitted).
 
 
 36
 Id. at 172 (quoting United States v. Espinosa, 827 F.2d at 613). Likewise, a trial court should not routinely admit this type of expert testimony without making the threshold determinations concerning specialized knowledge and helpfulness required by Rule 702 in a thoughtful and deliberate fashion.
 
 
 
 **
 The Honorable Bruce S. Jenkins, Senior District Judge for the District of Utah sitting by designation
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 The majority cites to United States v. Cordoba, 104 F.3d 225, 230 (9th Cir.1997), which similarly rejected the view that Daubert governs the admission of expert testimony regarding the modus operandi of narcotics traffickers, reasoning that "Daubert applies only to the admission of scientific testimony.... In order to qualify as scientific knowledge, an inference or assertion must be derived from the scientific method. The government expert testified on the basis of specialized knowledge, not scientific knowledge."
 It appears that this court has spoken on this subject with more than one voice. See Southland Sod Farms, 108 F.3d at 1143 n. 8 (9th Cir.1997) ("Daubert 's holding applies to all expert testimony, not just testimony based on novel scientific methods"); Claar v. Burlington Northern R. Co., 29 F.3d 499, 501 n. 2 (9th Cir.1994) (Daubert 's requirements "apply to all proffered expert testimony--not just testimony based on novel scientific methods or evidence").
 
 
 [2]
 Daubert offers some general observations concerning the factors bearing upon the inquiry whether the reasoning or methodology underlying proffered testimony as to "scientific knowledge" is scientifically valid, i.e., that it is "derived by the scientific method." 509 U.S. at 590. See id at 593-94. Perhaps it is these specific factors involving the scientific method which are "the Daubert standards of admission" which the court in this case says "simply do not apply."
 
 
 [3]
 Each of these witnesses presumably was deemed qualified as an expert based upon experience and to some extent training. Little foundation was laid concerning each witness' specialized knowledge of specific behavior patterns involving narcotics trafficking
 
 
 [4]
 These items included 26 plastic bags containing a total of 25.79 kilograms of pseudoephedrine; a plastic bag containing 591 grams of 94% pure methamphetamine; a fanny pack containing a calculator, a self-storage locker receipt, a hand-drawn map, a receipt for a shipment of 14 boxes of pseudoephedrine tablets to a residential address in Moreno Valley, money orders and a roll of cash; a black bag containing money orders and cash; and a can of air freshener
 
 
 [5]
 In Reid v. Georgia, 448 U.S. 438 (1980) (per curiam), the Supreme Court described a "drug courier profile" as "a somewhat informal compilation of characteristics believed to be typical of persons unlawfully carrying narcotics." Id. at 440 (emphasis added). This court has repeatedly noted that the government generally may not use such profiles as substantive evidence of guilt. See, e.g., United States v. Baron, 94 F.3d 1312, 1320 (9th Cir.1996); United States v. Beltran-Rios, 878 F.2d 1208, 1210 (9th Cir.1989)
 
 
 [6]
 The district court retains its role as gatekeeper even if a law enforcement officer's testimony is to be received as lay opinion testimony under Fed.R.Evid. 701. In United States v. VonWillie, 59 F.3d 922, 929 (9th Cir.1995), this court held that a law enforcement officer's testimony concerning the nexus between drug trafficking and weapons possession
 was rationally based on his perceptions during the search at VonWillie's residence and his perceptions during prior drug investigations. See Fed.R.Evid. 701(a). His testimony also was helpful to the jury's "determination of a fact in issue," see Fed.R.Evid. 701(b), namely whether VonWillie was involved in drug trafficking and whether he used a firearm "in relation to" a drug offense. See [ United States v.] Simas, 937 F.2d at 464-65 [ (9th Cir.1991) ] (the opinion of a law enforcement officer, who testified as a lay witness, "that the defendant's activities match 'the usual criminal modus operandi,' " is helpful to the jury and permissible under Rule 701(b)) (citation omitted)."