133 F.3d 930
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Hratch KAZANDJIAN, a/k/a Rich, Defendant-Appellant.
 No. 94-50254.
 United States Court of Appeals, Ninth Circuit.
 Submitted Nov. 4, 1997.[2]
Decided Dec. 19, 1997.
 
 1
 Before: CANBY and THOMPSON, Circuit Judges, and MOLLOY,[3] District Judge.
 
 MEMORANDUM[1]
 
 2
 Defendant-Appellant Hratch Kazandjian represents himself pro se on this appeal. He was convicted on Counts I and III of a three count indictment. Count I charged him with conspiring to distribute more than one kilogram of heroin in league with his unindicted coconspirators Krikor Nourian ("Nourian"), Hratch Kalfayan, and Chake Kojayan, as well as others known and unknown. Count III charged distribution of .154 grams of heroin. Kazandjian challenges his conviction and sentence on various grounds. The parties are familiar with the facts and we recite them only as necessary for purposes of discussion.
 
 I. Sufficiency of the Evidence
 
 3
 Kazandjian says the evidence was insufficient to support his conviction. There is sufficient evidence to support a conviction if, reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979); United States v. Ross, 112 F.3d 422, 425 (9th Cir.1997). In reviewing the evidence, "the court must respect the exclusive province of the jury to determine credibility of witnesses." United States v. Boone, 951 F.2d 1526, 1536 (9th Cir.1991).
 
 
 4
 The convicted defendant argues that the conspiracy charged in Count I concluded when his unindicted co-conspirators were arrested on June 26, 1991. Since no evidence tied him to the conspiracy prior to that date, he argues his conviction should be reversed.
 
 
 5
 "A conspiracy is deemed to continue 'until there is affirmative evidence of abandonment, withdrawal, disavowal or defeat of the object of the conspiracy.' " United States v. Cruz, --- F.3d ----, 1997 WL 578418 at * 2 (9th Cir. Sept. 19, 1997). The question here is whether the object of the conspiracy had been defeated when the heroin was seized and the unindicted co-conspirators arrested on June 26, 1997.
 
 
 6
 The heroin was imported from Lebanon for sale. The indictment charges that Kazandjian's part of in conspiracy was to receive payment for the delivery Agent Alleva (Nick) testified that he met with Kazandjian to settle payment for the June 26 delivery of heroin and to negotiate future purchases of the drug.
 
 
 7
 A conspiracy may continue "when all but one of the co-conspirators are arrested," for example, in order to receive "payment which would have been the last act of the conspiracy...." United States v. Mason, 658 F.2d 1263, 1269-70 (9th Cir.1981); see also United States v. Testa, 548 F.2d 847, 852 (9th Cir.1997) (conspiracy did not end with delivery and seizure of heroin because an "integral part of the scheme involved the payment of tribute money," and conversations regarding its payment were part of the conspiracy).
 
 
 8
 In this case, heroin was successfully delivered to intended purchasers, who turned out to be undercover DEA agents. The conspiracy continued when Kazandjian attempted to obtain payment for the delivery.
 
 
 9
 Kazandjian also argues that the evidence was insufficient to show that he was acting to collect the drug money as opposed to simply trying to collect on a personal debt owed him by the Lebanese heroin supplier. However, DEA agents testified that Kazandjian met with them on July 16 to collect the $87,000 still owed from the June 26 delivery as well as to discuss payment for the extra 200 grams. The trier if fact was entitled to credit the testimony of the agents, which constituted sufficient evidence to tie Kazandjian to the conspiracy.
 
 II. Jury Instructions
 
 10
 A district court's formulation of jury instructions is reviewed for abuse of discretion. United States v. Chastain, 84 F.3d 321 323 (9th Cir.1996). However, when the defendant does not object to the jury instruction at the time of trial, review is for plain error only. United States v. Bracy, 67 F.3d 1421, 1431 (9th Cir1995). Plain error will be found only where necessary to prevent a miscarriage of justice or to maintain the integrity of the judicial process. United States v. Ponce, 51 F.3d 820, 830 (9th Cir.1995).
 
 
 11
 Kazandjian challenges the jury instruction given by the district court on the conspiracy count. He reiterates his argument (discussed above) that the conspiracy ended when his unindicted coconspirators were arrested on June 26, 1991, and argues that the jury should have been so instructed. For the reasons set forth above, we reject that argument. The district court properly instructed the jury on the law of conspiracy.
 
 
 12
 Kazandjian also challenges the instruction on count III, distribution of heroin. He says Ninth Circuit Model Jury Instruction No. 9.04A should have been given. That instruction is for a different crime--possession with intent to distribute. The instruction given by the court accurately sets forth the elements of the offense.
 
 
 13
 Kazandjian's challenge to the entrapment instruction is also without merit. The instruction includes the elements of entrapment--"(1) 'government inducement of the crime,' and (2) 'the absence of predisposition on the part of the defendant.' " United States v. Mkhsian, 5 F.3d 1306, 1309 (9th Cir.1993). The instruction also informs the jury that predisposition on the part of the defendant must be before contact with law enforcement. Id. at 1310-11 (interpreting Jacobson v. United States, 112 S.Ct. 1535 (1992)).
 
 
 14
 Kazandjian next challenges the jury instructions on the basis that the district court should have given an accessory-after-the-fact instruction. This challenge is again based on Kazandjian's theory that the conspiracy concluded with the arrest of his unindicted co-conspirators, and is without merit.
 
 
 15
 Kazandjian claims that a specific intent instruction should have been given in this case. The Committee on Model Jury Instructions for the Ninth Circuit recommends avoiding an instruction on specific intent because distinctions between specific and general intent are likely to confuse the jury. 9th Cir.Crim. Jury Instr. 5.04 comment (1995). Instead, the committee recommends that instructions contain a precise definition of the mental state required for the offense charged. Id. Here, the district court's instruction stated that "[o]ne becomes a member of a conspiracy by willfully participating in the unlawful plan, with the intent to advance of further some object of purpose of the conspiracy...." The court further instructed that intent may be inferred from "surrounding circumstances," and that the jury "may consider it reasonable to draw the inference and find that a person intends the natural and probable consequences of acts knowingly done or knowingly omitted." Taken together, these instructions define the requisite mental state with adequate precision.
 
 
 16
 Kazandjian's final challenge to the jury instructions is that the district court erred in its reasonable doubt instruction. The district court instructed that, "A reasonable doubt is a doubt based upon reason and common sense, the kind of doubt that would make a reasonable person hesitate to act."
 
 
 17
 The Supreme Court has held that the Constitution does not require district courts to define reasonable doubt, nor does it require trial courts who do choose to explain the term to employ "any particular form of words ... in advising the jury of the government's burden of proof." Victor v. Nebraska, 511 U.S. 1, 5 (1994). "Rather, 'taken as a whole, the instructions must correctly convey the concept of reasonable doubt to the jury.' " Id. (quoting Holland v. United States, 348 U.S. 121, 140 (1954)). In Holland, the Court suggested that reasonable doubt was "the kind of doubt that would make a person hesitate to act...." Holland, 348 U.S. at 140. Thus, there was no error in the district court's reasonable doubt instruction. In sum, we reject all Kazandjian's challenges to tie jury instructions.
 
 III. Illegal Sentence
 
 18
 The legality of a guideline sentence is reviewed de novo. United States v. Garcia, 112 F.3d 395, 397 (9th Cir.1997). The district court's factual findings at sentencing are reviewed for clear error. United States v. Asagba, 77 F.3d 324, 325 (9th Cir.1996).
 
 
 19
 Kazandjian argues that his sentence of 121 months is illegal. Again he argues that he cannot be held liable for acts committed prior to joining a conspiracy. However, "[o]ne may join a conspiracy already formed and in existence, and be bound by all that has gone before in the conspiracy, even if unknown to him." United States v. Umagat, 998 F.2d 770, 772 (9th Cir.1993). Even so, "a defendant cannot be legally bound to a conspiracy unless his understanding with co-conspirators 'was of sufficient scope to warrant the conclusion that he embraced the common purpose of the conspiracy.' " Id. at 772-73.
 
 
 20
 Here, the jury necessarily concluded that Kazandjian was furthering the conspiracy by attempting to collect payment on the 1.2 kg of heroin seized on June 26, 1991. Since he was found guilty on Count I of the indictment, Kazandjian was properly held accountable for the 1.2 kg of heroin that was the object of the conspiracy. Thus, the base offense level of 32 is correct and the sentence is legal.
 
 IV. Joinder
 
 21
 Kazandjian submits that his case should have been joined with the case against Kalfayan and Kojayan.
 
 
 22
 Joint trials "conserve state funds, diminish inconvenience to witnesses and public authorities, and avoid delays in bringing those accused of crime to trial." United States v. Lane, 474 U.S. 438, 449 (1986). "Co-defendants jointly charged are, prima facie, to be jointly tried." Mariscal, 939 F.2d at 885; see also Zafiro v. United States, 506 U.S. 534 (1993) (noting preference in federal system for joint trials of defendants who are indicted together). Here though, Kaljayan and Kojayan were not co-defendants, but were named as unindicted co-conspirators in Kazandjian's indictment. Moreover, Kazandjian has shown no unfair prejudice resulting from his being tried alone. Thus, Kazandjian's argument is without merit.[4]
 
 V. Speedy Trial Violations
 
 23
 Kazandjian was first indicted or April 14, 1992, in New York on one count of conspiracy to distribute heroin. A superseding indictment changing the starting and ending dates of the conspiracy was filed on March 23, 1993. On May 3, 1993, Kazandjian moved for a change of venue from the Southern District of New York to the Central District of California. On September 20, 1993, Kazandjian filed a motion to dismiss for violation of his right to a speedy trial. On October 18, 1993, the district court granted dismissal without prejudice. Kazandjian now argues that the dismissal should have been with prejudice.
 
 
 24
 The district court must consider various factors in deciding whether the case should be dismissed with or without prejudice. namely, "the seriousness of the offense; the facts and circumstances of the case which led to dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice." 18 U.S.C. § 3162(a)(2). The district court should also consider whether the defendant has been prejudiced by the delay. United States v. Taylor, 487 U.S. 326, 335 (1988).
 
 
 25
 The district court carefully analyzed each of these factors and we find no fault with its analysis. Of particular significance is the finding that the bulk of the delay was attributable to Kazandjian's repeated requests for continuances while the case was in New York. The court's findings of fact on this matter are not clearly erroneous.
 
 VI. Discovery Violations
 
 26
 Kazandjian argues that the government committed several discovery violations during pretrial proceedings. He claims that although the government insisted pretrial discovery was completed: (1) the government later turned over twelve additional tape recordings; (2) that "by some miracle" stacks of discovery material were piled on his counsel's table prior to a court appearance; and (3) he was furnished with undercover agent reports that were written three years earlier. Also, Kazandjian claims that (1) exculpatory evidence was removed from his home but was missing at trial; (2) the government failed to review the file of an undercover agent who was allegedly under investigation; and (3) the government failed to inform Kazandjian about an alleged female informant, or that an unindicted coconspirator was a paid informant. Id. At 4m-4n.
 
 
 27
 In every criminal case, the government must disclose to the defense evidence in its possession that is favorable to the accused and material to guilt or punishment. Brady v. Maryland, 373 U.S. 83 (1963). "Failure to provide information as required by Brady is constitutional error only if the information is material, that is, only if there is a reasonable probability that the result of the proceeding would have been different had the information been disclosed." United States v. Amlani, 111 F.3d 705, 712 (9th Cir.1997).
 
 
 28
 Kazandjian does not explain how any of the alleged violations had a reasonable probability of affecting the outcome of his case. Therefore, his claim fails.
 
 VII. Franks Hearing
 
 29
 Kazandjian argues that the district court erred when it denied his motion for a Franks hearing. He claims the affidavit leading to his indictment contained false information. He argues that the district court had no justification in denying his motion, and that the court was biased and prejudiced against him.
 
 
 30
 A district court must hold a hearing to investigate the veracity of an affiant when a defendant makes a substantial preliminary showing that a false statement was (1) deliberately or recklessly included in an affidavit submitted in support of a search warrant; and (2) material to the magistrate's finding of probable cause, United States v. Meling, 47 F.3d 1546, 1553 (9th Cir.1995) (applying Franks v. Delaware, 438 U.S. 154 (1978)). The district court's refusal to conduct such a hearing is reviewed de novo. Meling, 47 F.3d at 1553.
 
 
 31
 Kazandjian failed to make a substantial preliminary showing that the search warrant affidavit contained intentional or reckless material false statements or omissions. Moreover, he failed to demonstrate that even if there was any omission, that the omission would have been material to a finding of probable cause. Thus, his motion was properly denied
 
 VIII. Delay In Appellate Process
 
 32
 Kazandjian argues that his due process rights were violated by excessive delay of the appellate process. He complains that transcripts of his case have been provided to him piecemeal, and that he has been forced to file this appeal without all the relevant transcripts.
 
 
 33
 To determine whether a due process violation occurred in the appellate process, this court looks to four areas of inquiry: (1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of this right to appeal; and (4) the prejudice to the defendant. United States v. Tucker, 8 F.3d 673 (9th Cir.1993) (en banc).
 
 
 34
 On May 22, 1996, this Court addressed Kazandjian's concerns regarding the transcripts and found that "although there has been some delay and confusion in the processing of this appeal, it is not the sort of inordinate delay at issue in U.S. v. Mohawk, 20 F.3d 1480, 1487-89 (9th Cir.1994)."[5] In a later order of July 15, 1997, we stated that, "All of the transcripts designated by the appellant have been prepared.... We find that the district court has fulfilled its obligation to produce the transcripts from the hearings actually docketed...."
 
 
 35
 In the same Order, we concluded that much of the delay in processing this appeal is attributable to Kazandjian's numerous and repetitive motions. Finally, we noted that, "The delays incurred, coupled with confusion surrounding the production of transcripts, is not inordinate...."
 
 
 36
 In sum, Kazandjian's claim of excessive delay of the appellate process is without merit.
 
 IX. Vindictive Prosecution
 
 37
 Kazandjian also argues that the district court erred when it denied his motion to dismiss for vindictive prosecution. He claims that additional charges were filed against him in retaliation for filing a motion to dismiss pursuant to the Speedy Trial Act.
 
 
 38
 To establish a claim for vindictive prosecution based upon the filing of additional charges, a defendant must show that "charges of increased severity were filed because the accused exercised a statutory, procedural or constitutional right in circumstances that give rise to an appearance of vindictiveness." United States v. Garza-Juarez, 992 F.2d 896, 906 (9th Cir.1993).
 
 
 39
 To show vindictiveness, the defendant must either prove actual vindictiveness, or establish sufficient facts to create the presumption of vindictiveness. United Sates v. Goodwin, 457 U.S. 368, 381 (1982). Moreover, the government may threaten to indict a defendant on more serious charges if the defendant refuses to plead guilty to the offenses charged. Garza-Juarez, 992 F.2d at 906.
 
 
 40
 In the present case, Kazandjian failed to make a threshold showing of vindictiveness or the likelihood of it. The additional criminal charges resulted from Kazandjian's refusal to accept a plea bargain and not as the result of his exercise of Speedy Trial rights. Thus, his claim for vindictive prosecution fails.
 
 X. Outrageous Conduct
 
 41
 Finally, Kazandjian argues that his conviction should be dismissed because of the government's outrageous conduct. He bases this claim on the totality of facts leading to his conviction.
 
 
 42
 To violate due process, the government's conduct must be "so grossly shocking and so outrageous as to violate the universal sense of justice." United States v. Barrera-Moreno, 951 F.2d 1089, 1092 (9th Cir.1991). There is no indication in the record that the government acted in such a manner. Kazandjian's claim of outrageous government conduct in tie prosecution of this case is without merit.
 
 
 43
 AFFIRMED.
 
 
 
 [2]
 The panel finds this case appropriate for submission without oral argument pursuant to Fed. R.App. P. 34(a) and 9th Cir. R. 34-4
 
 
 [3]
 The Honorable Donald W. Molloy, United States District Judge for the District of Montana, sitting by designation
 
 
 [1]
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. F. 36-3
 
 
 [4]
 Kojayan and Kalfayan were tried and convicted but their sentences were subsequently overturned for government misconduct. United States v. Kojayan, 8 F.3d 1315 (9th Cir.1993) (serious government misconduct in denying that prosecution could have called informant as a witness). However, the prosecutorial misconduct was peculiar to the Kojayan trial and did not taint Kazandjian's trial where the informant testified
 
 
 [5]
 We recognize that three types of prejudice can flow from appellate delay: (1) oppressive incarceration pending appeal; (2) anxiety and concern of the convicted party awaiting the outcome of appeal; and (3) impairment of the convicted person's grounds for appeal of the viability of his defense in case of retrial. United States v. Mohawk, 20 F.3d 1480, 1435-86 (9th Cir.1994)