**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                              No. 97-4069

CARLOS BROWN,
Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of West Virginia, at Wheeling.
Frederick P. Stamp, Jr., Chief District Judge.
(CR-95-15)

Submitted: December 23, 1997

Decided: January 21, 1998

Before MURNAGHAN and ERVIN, Circuit Judges, and
BUTZNER, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Gail W. Kahle, DICKIE, MCCAMEY & CHILCOTE, Wheeling,
West Virginia, for Appellant. William D. Wilmoth, United States
Attorney, Thomas O. Mucklow, Assistant United States Attorney,
Wheeling, West Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Carlos Brown appeals his conviction and sentence for distribution
of a controlled substance within 1000 feet of a school, in violation of
21 U.S.C.A. §§ 841, 860 (West 1981 & Supp. 1997). Finding no
error, we affirm.

I.

At Brown's trial, Veronica "Sissy" Jones testified that on May 15,
1995, she bought $50 worth of crack cocaine from Brown, while
working as a paid informant for the Mon Valley Drug Task Force.
The transaction was audiotaped. Jones, a heavy drug user, did not call
the dealer by name on the tape. At trial, Jones alternately referred to
the person who sold her drugs as "Cocoa" (a nickname of Brown's)
or "Colyn" (a third person, who also apparently dealt drugs). How-
ever, she positively identified Brown in court as the person from
whom she bought crack cocaine on May 15. Investigator Kelly D.
Moran testified that, after escorting Jones back to the police station,
he returned to the area of the drug transaction where he saw Brown,
but not Colyn.

After the jury had retired to consider its verdict, Assistant United
States Attorney ("AUSA") Thomas D. Mucklow asked Appellant's
counsel why he had not struck a juror who had indicated that she had
an out-of-town wedding commitment. AUSA Mucklow then com-
mented that perhaps the juror was planning to attend the wedding of
AUSA Sam Nazzaro, which was being held out of town that same
weekend.[1] Brown then moved for a new trial based on juror and pro-

_____

[1] AUSA Mucklow asserts that this comment was made in jest. Appel-
lant contends that this information was purposely suppressed. The district
court did not resolve this factual dispute.

2

secutorial misconduct. The motion papers on this issue show that the juror was invited to AUSA Nazzaro's wedding but was not a relative. The court denied the motion, finding that the juror did not have the type of relationship with an Assistant United States Attorney that would have excluded her from jury service and that the juror had not improperly concealed this relationship.

In an unrelated trial, Jones testified that she had bought crack cocaine from the defendants, who were family members. She then recanted her testimony in certain out-of-court statements. The district court, in that case, conducted extensive hearings on the recantation and concluded that Jones had not testified falsely during the trial. The district court (presided over by a different judge than herein) denied the defendants' motion for a new trial, and that decision was affirmed by this court. See United States v. Jones, Nos. 96-4430/96-4434/96-4437 (4th Cir. Mar. 21, 1997) (unpublished).

When Brown became aware of this information, he filed a second motion for a new trial based on the newly discovered evidence of recantation. The district court denied the motion without a hearing, relying on the findings of the district court judge in Jones.

The Presentence Investigation Report suggested that 6.48 grams of crack cocaine was attributable to Brown for purposes of guidelines sentencing determination. Brown objected to the determination of relevant conduct, because only .24 grams of the amount was determined by reference to weights established at trial. The remaining 6.24 grams was supported by reference to grand jury transcripts, primarily the testimony of Kimberley Satterfield (4.8 grams). Prior to sentencing, Brown unsuccessfully attempted to locate Satterfield in order to have her testify. Brown also subpoenaed two other grand jury witnesses, who did not appear at the sentencing hearing.

At the conclusion of the sentencing hearing, the district court found that the grand jury testimony of all three witnesses was reliable and attributed 6.48 grams of crack cocaine to Brown, resulting in an offense level of 27. This base offense level, combined with Brown's Criminal History Category of I, resulted in a guideline range of seventy to eighty-seven months. The district court sentenced Brown to seventy-four months.

II.

Brown first maintains that he was denied a fair and impartial jury by a juror's and AUSA Mucklow's failure to disclose during voir dire the juror's relationship with AUSA Nazzaro. During voir dire, the district court asked the panel the following question:

> Are any of you related by blood or connected by marriage with either of the lawyers who will be representing the parties in this criminal action or any employees of the United States Attorney for the Northern District of West Virginia in this case, who is Mr. William D. Wilmoth?

No juror responded.

The record developed after trial reflects that, although the juror in question was invited to AUSA Nazzaro's wedding, she was <u>not</u> related to Nazzaro.[2] Instead, the record shows that the juror was friends with Nazzaro's parents. In addition, Brown never requested voir dire regarding social relationships with members of the United States Attorney's office, and Brown did not ask any follow-up questions when the juror indicated during voir dire that she had an out-of-town wedding to attend.[3] Based on these findings and the fact that the

_____

[2] AUSA Nazarro presented certain witnesses to the grand jury in this case. However, he was not involved in the case past the grand jury phase, and his name was never mentioned to the jury.

[3] During voir dire, the district court indicated its willingness to excuse the juror due to this prior commitment. Brown contends that this willingness proves that the district court would have stricken the juror for cause had the details of the wedding been known. Brown asserts that the court's willingness to excuse the juror from service showed that the court was concerned about her being partial. Brown's logic is faulty, however, because an attempt to accommodate a juror's schedule cannot be translated into evidence that the district court would have found possible bias and dismissed the juror for cause had the identity of the groom been disclosed. Furthermore, after the court expressed its inclination to excuse the juror from service, Brown's attorney stated that he would likely strike her. However, at the conclusion of jury selection, she had not been struck by either side and was a member of the jury panel.

4

juror did not affirmatively respond to any of the voir dire questions concerning potential prejudice, the district court found that the juror was an "impartial" member of the jury.

Nonetheless, Brown suggests that the juror's non-response to the question above breached the juror's legal duty to be completely honest and forthright in answering the questions posed. However, the juror's non-response to the question above was entirely honest and appropriate. Absent a juror's failure to honestly answer a material question, Brown cannot show his entitlement to a new trial. See McDonough Power Equip. v. Greenwood, 464 U.S. 548, 555-56 (1984).

In addition, a claim of prosecutorial misconduct requires a showing of prejudice. See Darden v. Wainwright, 477 U.S. 168, 181 (1986) (due process rights are only violated when prosecutor's misconduct renders a trial fundamentally unfair). Because Brown has failed to make any showing of juror misconduct, he cannot show prosecutorial misconduct on this point. Regardless of what AUSA Mucklow knew of the situation, Brown fails to show that the district court's finding that the juror was impartial was erroneous. As the record is devoid of any evidence of juror bias or misconduct, Brown's contention that he was denied a fair and impartial jury is frivolous.

III.

Next, Brown objects to the following statement by the prosecutor during rebuttal closing argument:

> People like Carlos Brown who are more than happy to stand out on the street corner and sell crack to people like Sissy, people who now can't even walk. He is more than happy to stand up there and give her a 5-0, and she says he was surprised because she only usually buys 20's. Must have been a real great day for Carlos.

Defense counsel objected, asserting that this line of argument implied other uncharged drug sales. The objection was overruled.

5

Earlier on direct examination, Jones testified without objection as follows:

> And I walked from there to Maple Avenue, and I seen Colyn, Cocoa, whatever, excuse me, Cocoa, and asked him for 50. I guess then, you know, it was sort of strange because I am normally buying 20's, you know.

On cross-examination, she again testified without objection:

> Yeah, I'm . . . I am saying that Colyn, you know, when I walked up to him, I said, "Could I get a 50?" And I think then it looked pretty strange because I am so used to buying 20's from them.

Prosecutorial misconduct mandating reversal requires a showing of an improper remark by the prosecutor which prejudicially impacted the substantial rights of the defendant so as to deprive him of a fair trial. See United States v. Mitchell, 1 F.3d 235, 240 (4th Cir. 1993). A prosecutor's closing argument is not improper if it is reasonably based on the trial testimony. See United States v. Chastain, 84 F.3d 321, 323 (9th Cir. 1996).

In this case, we find simply that there was no misstatement of the testimony. The clear implication of Jones' testimony is that she normally purchased $20 pieces of crack cocaine, so that when she dealt with Brown for a $50 piece, it appeared "strange." Because the prosecutor's remark was a reasonable interpretation of Jones' testimony, it was entirely proper. Brown's claim to the contrary has no merit.

IV.

Brown next asserts that the district court erred by denying his motion for a new trial based upon the newly discovered evidence of Jones' recantation of testimony given in an unrelated trial. A district court's denial of a motion for a new trial will not be set aside absent an abuse of discretion. See United States v. Campbell, 977 F.2d 854, 860 (4th Cir. 1992). An abuse of discretion occurs when a judge fails completely to exercise discretion, fails to use judicially recognized

6

factors that apply in the context of the case, or exercises his discretion based upon erroneous factual or legal premises. See James v. Jacobson, 6 F.3d 233, 239 (4th Cir. 1993).

The district court may grant a new trial for newly discovered evidence only when the following criteria are met: (i) the evidence must in fact be newly discovered since the trial; (ii) facts must be alleged from which the court may infer diligence on the movant's part; (iii) the evidence on which the court relies must not be merely cumulative or impeaching; (iv) the evidence must be material to the issues involved; and (v) the evidence must be such that, on a new trial, it would probably produce an acquittal. See United States v. Chavis, 880 F.2d 788, 793 (4th Cir. 1989). If all the criteria are not met, the motion for a new trial must be denied. See id.

With regard to part (iii) of the Chavis test, we have emphasized that new evidence going only to the credibility of the witness does not generally warrant granting a new trial. See United States v. Custis, 988 F.2d 1355, 1359 (4th Cir. 1993), aff'd, 511 U.S. 485 (1994). A rare exception to this rule may be found under narrow circumstances:

> If the government's case rested entirely on the uncorroborated testimony of a single witness who was discovered after trial to be utterly unworthy of being believed because he had lied consistently in a string of previous cases, the district judge would have the power to grant a new trial in order to prevent an innocent person from being convicted.

Id. (citations omitted).

Brown presents no proof that Jones testified untruthfully at his trial, other than her somewhat shaky identification of him, which was fully explored during cross-examination. The newly-discovered evidence shows that, while Jones testified truthfully at the Jones trial, she made untrue statements out-of-court to her church, to members of her family, and to an investigator. Even if Jones lied during certain unrelated out-of-court statements, it cannot be assumed that she lied at Brown's trial. Without more, this impeaching evidence is insufficient to warrant a new trial, especially considering the newly-

7

discovered evidence demonstrated that Jones testified truthfully in court.

Furthermore, the Custis exception does not apply, because Jones' testimony was corroborated by the audiotape and by Kelly's testimony. In fact, Brown does not, and in light of the audiotape cannot, dispute that Jones bought crack cocaine on the date in question. He asserts only that she lied concerning her identification of the seller. While family pressure provided the basis for the recantation of Jones' testimony in Jones, Brown offers no motive for Jones to have lied at his trial, and she has never recanted that testimony. Therefore, because Brown cannot satisfy part (iii) of the Chavis test, we decline to address the remaining factors and hold that the district court did not abuse its discretion in denying Brown's motion for a new trial.

V.

Next, Brown contends that the district court erred in attributing relevant conduct to him, when he was denied any meaningful opportunity to challenge the conduct. See U.S. Sentencing Guidelines Manual § 6A1.3(a) (Nov. 1996), p.s. (providing that"[w]hen a reasonable dispute exists about any factor important to the sentencing determination, the court must ensure that the parties have an adequate opportunity to present relevant information"). We review the decision of the district court to consider the grand jury testimony, without delaying in order to afford Brown an opportunity to locate and examine the grand jury witnesses, for an abuse of discretion. See United States v. Brinkworth, 68 F.3d 633, 640 (2d Cir. 1995).

We conclude that, under the circumstances presented here, the district court did not abuse its discretion. First, Brown gives no indication of what information, if any, examination of these witnesses would have revealed. In addition, Brown's attorney did not proffer the proper quantity of drugs to be attributed to his client, presented no witnesses or other evidence on this issue, and made no attempt to interview and record statements by the disputed witnesses.[4] See

_____

[4] It is also notable that Brown had a full year to prepare to meet the evidence as to relevant conduct. He received the presentence report in January 1996 and was not sentenced until January 1997.

8

United States v. Zuleta-Alvarez, 922 F.2d 33, 36 (1st Cir. 1990) (affirming denial of request for presentation of testimony at sentencing based in part on defendant's failure to establish the need for such testimony). Thus, no hearing was necessary here because Brown received an adequate opportunity to present information to the court concerning drug quantity. Accordingly, we conclude that the district court did not abuse its discretion in refusing to delay the sentencing.

VI.

Finally, Brown contends that the district court had insufficient evidence to find that he should be accountable for 6.48 grams of crack cocaine. Brown asserts that this amount should be reduced by 4.8 grams, representing the amount attributed to Brown based on Satterfield's grand jury testimony:

> Q: You purchased from [Appellant] how many times?
>
> A: See, I don't know. Maybe, 20, 30 times because he would be there with it, and I would stay all night and then I would owe him money, too, the next morning because its all family and they would be there with it. You end up owing more money than you got because they got it right there.

The Probation Officer calculated the 4.8 grams by multiplying the amount Satterfield generally purchased (.24 grams) by 20, the more conservative number mentioned by Satterfield.

The prosecution is required to establish the amount of drugs by a preponderance of the evidence, and the district court's factual determination of the amount of drugs is reviewed for clear error. See United States v. Williams, 986 F.2d 86, 90 (4th Cir. 1993). The district court was provided with a transcript of Satterfield's grand jury testimony and made the determination that the testimony was sufficiently credible to permit reliance for sentencing purposes. In addition, even if Brown sold Satterfied crack cocaine on as few as fourteen occasions, the resulting offense level would be identical. Based on our review of the record, we are unable to conclude that the district court's factual determination was clearly erroneous.

9

VII.

For the foregoing reasons, we affirm Brown's conviction and sentence. We dispense with oral argument, because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

10